**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
　　　　lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK A. RODRIGUEZ, Individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CPI AEROSTRUCTURES, INC., DOUGLAS MCCROSSON, and VINCENT PALAZZOLO,<br><br>　　　　Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

Plaintiff Mark A. Rodriguez ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding CPI Aerostructures, Inc. ("CPI Aerostructures" or the "Company"), analysts' reports and advisories about the Company, and information readily

1

obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants who purchased or otherwise acquired the publicly traded securities of CPI Aerostructures from May 15, 2018 through February 14, 2020, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as CPI Aerostructures maintains its headquarters in this judicial district, and the alleged misstatements entered and subsequent damages took place within this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying Certification, purchased the Company's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

7. Defendant CPI Aerostructures engages in the contract production of structural aircraft parts for fixed wing aircraft and helicopters in the commercial and defense markets. The Company is incorporated in New York with its principal executive offices located at 91 Heartland Boulevard, Edgewood, New York. The Company's securities are traded on the New York Stock Exchange ("NYSE") under the ticker symbol "CVU."

8. Defendant Douglas McCrosson ("McCrosson") has served as CPI Aerostructures' President and Chief Executive Officer ("CEO") since March 6, 2014. McCrosson also serves as a Director on the Company's Board of Directors (the "Board").

9. Defendant Vincent Palazzolo ("Palazzolo") served as CPI Aerostructures' Chief Financial Officer ("CFO") from May 2004 until November 18, 2019.

10. Defendants McCrosson and Palazzolo are sometimes referred to herein as the "Individual Defendants."

11. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

3

(c)  was privy to confidential proprietary information concerning the Company and its business and operations;

(d)  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)  approved or ratified these statements in violation of the federal securities laws.

12. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14. The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
### Background

15. On March 22, 2018, CPI Aerostructures filed its annual report on Form 10-K for the fiscal year ending December 31, 2017 with the SEC (the "2017 10-K"). The 2017 10-K stated the following about the Company's internal controls:

> Management conducted an evaluation of the effectiveness of internal control over financial reporting based on criteria established in *Internal Control- Integrated Framework* (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"). Based on this evaluation, management

4

concluded that the Company's internal control over financial reporting was effective as of December 31, 2017.

16.     The 2017 10-K also stated that after evaluation, "the Company's disclosure controls and procedures as of the end of the period covered by this report are effective in timely providing them with material information relating to the Company required to be disclosed in the reports the Company files or submits under the Exchange Act."

## Materially False and Misleading Statements

17.     On May 15, 2018, CPI Aerostructures filed a Form 10-Q for the quarterly period ended March 31, 2018 with the SEC (the "1Q 2018 10-Q"), which provided the Company's financial results and position. The 1Q 2018 10-Q was signed by Defendants McCrosson and Palazzolo. The 3Q 2018 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants McCrosson and Palazzolo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

18.     The 1Q 2018 10-Q stated there had been no change in the Company's internal control over financial reporting for the quarter ended March 31, 2018 that "has materially affected or is reasonably likely to materially affect our internal control over financial reporting."

19.     The 1Q 2018 10-Q stated that McCrosson and Palazzolo determined the Company's disclosure controls and procedures were effective as of March 31, 2018.

20.     The 1Q 2018 10-Q stated that net income for the quarter was $1,256,765 or $0.14 per basic share, revenue for the quarter was $18,191,623, retained earnings was $21,805,417, and contract assets totaled $114,023,576.

21.     On August 9, 2018, CPI Aerostructures filed a Form 10-Q for the quarterly period ended June 30, 2018 with the SEC (the "2Q 2018 10-Q"), which provided the Company's financial

5

results and position. The 2Q 2018 10-Q was signed by Defendants McCrosson and Palazzolo. The 2Q 2018 10-Q contained signed SOX certifications by Defendants McCrosson and Palazzolo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

22. The 2Q 2018 10-Q stated there had been no change in the Company's internal control over financial reporting for the quarter ended June 30, 2018 that "has materially affected or is reasonably likely to materially affect our internal control over financial reporting."

23. The 2Q 2018 10-Q stated that McCrosson and Palazzolo determined the Company's disclosure controls and procedures were effective as of June 30, 2018.

24. The 2Q 2018 10-Q stated that net income for the quarter was $1,257,225 or $0.14 per basic share, revenue for the quarter was $20,261,239, retained earnings was $23,062,642, and contract assets totaled $115,180,455.

25. On November 13, 2018, CPI Aerostructures filed a Form 10-Q for the quarterly period ended September 30, 2018 with the SEC (the "3Q 2018 10-Q"), which provided the Company's financial results and position. The 3Q 2018 10-Q was signed by Defendants McCrosson and Palazzolo. The 3Q 2018 10-Q contained signed SOX by Defendants McCrosson and Palazzolo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

26. The 3Q 2018 10-Q stated there had been no change in the Company's internal control over financial reporting for the quarter ended September 30, 2018 that "has materially affected or is reasonably likely to materially affect our internal control over financial reporting."

27. The 3Q 2018 10-Q stated that McCrosson and Palazzolo determined the Company's disclosure controls and procedures were effective as of September 30, 2018.

28. The 3Q 2018 10-Q stated that net income for the quarter was $1,328,153 or $0.15 per basic share, revenue for the quarter was $19,944,558, retained earnings was $24,390,795, and contract assets totaled $114,094,962.

29. The statements referenced in ¶¶17-28 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) CPI Aerostructures' financial statements included in the Company's Forms 10-Q for the first, second, and third quarters of 2018 incorrectly applied generally accepted accounting principles and thus revenue, net income, retained earnings, and contract assets were overstated; (2) as a result, the financial statements included in the Form 10-Qs for 2018 and the annual report on Form 10-K for 2018 could no longer be relied upon and required restatement; (3) CPI Aerostructures lacked adequate internal controls over financial reporting and effective disclosure controls and procedures as of the period during each reporting period of 2018; and (4) as a result, CPI Aerostructures' public statements were materially false and/or misleading at all relevant times.

## The Truth Begins to Emerge

30. On February 8, 2019, before market hours, CPI Aerostructures file a Form 8-K with the SEC, reporting that its previously filed 3Q 2018 10-Q should no longer be relied upon. Specifically, CPI Aerostructures disclosed that, during the three and nine months ended September 30, 2018, revenue was overstated by $900,000 to $950,000, net income was overstated by $725,000 to $775,000, and, as a result, earnings per share were overstated by $0.09 per share, for each such period. CPI Aerostructures also admitted that management determined the Company

7

had a material weakness in its internal control over financial reporting as of September 30, 2018, and that its disclosure controls and procedures were not effective. The Company's Form 8-K stated, in relevant part:

> On February 7, 2019, the Audit Committee of the Board of Directors (the "Audit Committee") of CPI Aerostructures, Inc. (the "Company"), determined based on the recommendation of management and in consultation with CohnReznick LLP ("CohnReznick"), the Company's independent registered public accounting firm, that ***the Company's previously issued financial statements as of and for the three and nine months ended September 30, 2018 included in its Form 10-Q as filed with the Securities and Exchange Commission on November 13, 2018, should no longer be relied upon*** due to an error in the financial statements that was identified by management.
>
> This error occurred in the Company's billing process and resulted in the overstatement of revenue for the three and nine months ended September 30, 2018. The identification of the error was made by management during the Company's review of the billing process for the year ended December 31, 2018 in connection with the preparation of the Company's 2018 financial statements. Management's preliminary conclusion is that the error was limited to one instance and that ***the effect of correcting the foregoing error in the Company's financial statements for the three and nine months ended September 30, 2018 is (i) a reduction of revenue and income before provision for income taxes of approximately $900,000 to $950,000, (ii) a reduction of net income of approximately $725,000 to $775,000 and (iii) a reduction of fully diluted earnings per share of approximately $ 0.09, for each such period***. . . .
>
> \* \* \*
>
> The Company expects to file an amended Quarterly Report on Form 10-Q/A for the periods ended September 30, 2018 to restate the financial statements and other disclosures contained therein for the error noted above as soon as practical.
>
> ***In connection with the restatement noted above, management has determined that a material weakness existed in the Company's internal control over financial reporting as of September 30, 2018. As a result, the Company's chief executive officer and chief financial officer have concluded that the Company's disclosure controls and procedures were not effective at the reasonable assurance level as of September 30, 2018.***

(Emphasis added.)

31. On this news, shares in CPI Aerostructures' stock fell $0.59 per share or over 8.5% to close at $6.34 per share on February 8, 2019, damaging investors.

32. On April 1, 2019, CPI Aerostructures filed its annual report on Form 10-K for the fiscal year ending December 31, 2018 with the SEC (the "2018 10-K"). The 2018 10-K was signed by Defendants McCrosson and Palazzolo. The 2018 10-K contained signed SOX certifications by Defendants McCrosson and Palazzolo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud. The 2018 10-K included the Company's financial results for the year ending December 31, 2018.

33. On May 10, 2019, CPI Aerostructures filed a Form 10-Q for the quarterly period ended March 31, 2019 with the SEC (the "1Q 2019 10-Q"), which provided the Company's financial results and position. The 1Q 2019 10-Q was signed by Defendants McCrosson and Palazzolo. The 1Q 2019 10-Q contained signed SOX by Defendants McCrosson and Palazzolo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

34. The 1Q 2019 10-Q stated that net income for the quarter was $1,658,599 or $0.14 per basic share, revenue for the quarter was $25,583,531, retained earnings was $24,418,813, and contract assets totaled $120,749,918.

35. On August 8, 2019, CPI Aerostructures filed a Form 10-Q for the quarterly period ended June 30, 2019 with the SEC (the "2Q 2019 10-Q"), which provided the Company's financial results and position. The 2Q 2019 10-Q was signed by Defendants McCrosson and Palazzolo. The 2Q 2019 10-Q contained signed SOX certifications by Defendants McCrosson and Palazzolo

attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

36. The 2Q 2019 10-Q stated that net income for the quarter was $2,710,457 or $0.23 per basic share, revenue for the quarter was $23,158,251, retained earnings was $27,129,270, and contract assets totaled $ 120,254,379.

37. On November 8, 2019, CPI Aerostructures filed a Form 10-Q for the quarterly period ended September 30, 2019 with the SEC (the "3Q 2019 10-Q"), which provided the Company's financial results and position. The 3Q 2019 10-Q was signed by Defendants McCrosson and Palazzolo. The 3Q 2019 10-Q contained signed SOX certifications by Defendants McCrosson and Palazzolo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

38. The 3Q 2019 10-Q stated after the CEO and CFO's evaluation of the Company's disclosure controls and procedures, that "as of September 30, 2019, that our disclosure controls and procedures were effective at the reasonable assurance level."

39. The 3Q 2019 10-Q stated that net income for the quarter was $1,666,913 or $0.14 per basic share, revenue for the quarter was $25,711,153, retained earnings was $28,796,183, and contract assets totaled $121,458,084.

40. The statements referenced in ¶¶32-39 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) CPI Aerostructures' financial statements

report on Forms 10-Q for the first, second, and third quarters of 2019 incorrectly applied generally accepting accounting principles and thus revenue, net income, retained earnings, and contract assets were overstated; (2) as a result, the financial statements included in the Form 10-Qs for 2019 could no longer be relied upon and required restatement; (3) CPI Aerostructures lacked effective disclosure controls and procedures during the third quarter of 2019; and (4) as a result, CPI Aerostructures' public statements were materially false and/or misleading at all relevant times.

41. On February 14, 2020, CPI Aerostructures issued a press release, titled "CPI Aerostructures to Restate Fiscal 2018 and Year-to-Date Fiscal 2019 Financial Statements as a Result of Errors in Connection With Revenue Recognition Under ASC Topic 606" which announced that its financial statements for the fiscal year 2018 and year to date for 2019 could no longer be relied upon. The press release stated in relevant part:

> EDGEWOOD, N.Y., Feb. 14, 2020 (GLOBE NEWSWIRE) -- CPI Aerostructures, Inc. ("CPI Aero®" or the "Company") (NYSE American: CVU) today announced that the Audit Committee of the Board of Directors of CPI Aero determined, based on the recommendation of management and in consultation with CPI Aero's independent registered public accounting firm, that ***the Company's financial statements included in its annual report on Form 10-K for the year ended December 31, 2018, quarterly reports on Forms 10-Q for the quarters ended March 31, 2018, June 30, 2018, and September 30, 2018, and quarterly reports on Forms 10-Q for the quarters ended March 31, 2019, June 30, 2019, and September 30, 2019 should no longer be relied upon due to an error in those financial statements relating to the Company's recognition of revenue from contracts with customers under ASC Topic 606. Similarly, the independent auditor's reports on the effectiveness of internal control over financial reporting for the year ended December 31, 2018, management's reports on the effectiveness of internal control over financial reporting, press releases, and investor communications describing the Company's financial statements for such periods should no longer be relied upon.*** The Company's cash flows from operations for the affected periods are not expected to be impacted.
>
> The error was uncovered as part of the preparation of the Company's 2019 annual financial statements. After reconsideration of the terms of the Company's contracts with customers, ***Management's preliminary conclusion is that certain revenues and net income were recognized prematurely or inaccurately due to an incorrect application of generally accepted accounting principles***. Therefore,

11

*previously reported revenue and net income are believed to have been overstated. The error is also expected to have an impact on the Company's balance sheets for the affected periods. Specifically, retained earnings and contract assets are believed to be overstated.*

The Company expects to amend its annual report on Form 10-K for the year ended December 31, 2018 and its quarterly reports on Form 10-Q for the quarters ended March 31, 2018, June 30, 2018, September 30, 2018, March 31, 2019, June 30, 2019, and September 30, 2019, and to restate the financial statements and other disclosures contained therein as soon as reasonably practical.

*Management has determined that a material weakness existed in the Company's internal control over financial reporting as of the end of each of the affected periods.* The Company has reviewed its financial closing process and believes it has identified the corrective action necessary to remediate the cause of the error. The Company plans to include a discussion of the Company's plan to remediate the material weakness in its annual report on Form 10-K for the year ended December 31, 2019.

(Emphasis added).

42. On this news, shares in CPI Aerostructures' stock fell $1.80 per share or approximately 27% to close at $4.87 per share on February 14, 2020, damaging investors.

43. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

44. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the publicly traded securities of CPI Aerostructures during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants' acts as alleged violated the federal securities laws;

(b) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's securities are traded in efficient markets;

(d) the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e) the Company traded on the NYSE, and was covered by multiple analysts;

(f) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g) Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

51. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

53. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54. This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55. During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

56. The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

57. The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

58. Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

59. As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

60. Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

61. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

62. By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to

the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II
### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

63. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

65. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

66. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

67. Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: February 24, 2020

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/Phillip Kim*
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

*Counsel for Plaintiff*