# ROBBINS GELLER Rudman & Dowd LLP

| | | |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Alan I. Ellman
aellman@rgrdlaw.com

December 2, 2020

VIA ECF

The Honorable Eric N. Vitaliano
United States District Court
for the Eastern District of New York
225 Cadman Plaza East
Brooklyn NY 11201

> Re: *Rodriguez v. CPI Aerostructures, Inc., et al.*, 1:20-cv-00982-ENV-CLP

Dear Judge Vitaliano:

Together with Robbins LLP, we represent Lead Plaintiff Jeffrey L. Feinberg, individually and as trustee and beneficiary of the Jeffrey L. Feinberg Personal Trust ("Plaintiff") in this action. We respectfully write in response to Defendants' letter dated November 23, 2020 (ECF No. 40, the "Ltr.") requesting a pre-motion conference and expressing their intent to move to dismiss the Consolidated Amended Complaint (ECF No. 35, the "Complaint").[1] Plaintiff believes that the Complaint states a claim under §§11, 12(a)(2) and 15 of the Securities Act and §§10(b) and 20(a) of the Exchange Act.

Throughout the Class Period, CPI Aerostructures, Inc. ("CPI" or the "Company"), an aircraft-parts supplier, repeatedly represented that it had adopted the long-scrutinized and highly publicized accounting standard known as ASC Topic 606 ("Topic 606"). ¶¶3, 40. On February 14, 2020, CPI disclosed that for fiscal year 2018 and the 2018 and 2019 interim periods, it had failed to adopt a specific and fundamental undertaking set forth in Topic 606 that caused its actual financial results, and Defendants' statements related thereto, to bear no likeness whatsoever to CPI's reported results during the Class Period. ¶¶4-6. CPI also disclosed that its internal controls over financial reporting were materially deficient. ¶7. In response, CPI's stock price plummeted 37%. ¶201.

On August 25, 2020, CPI issued the Restatement, which quantified the staggering impact of CPI's failure to adopt fundamental instructions of Topic 606, and disclosed that CPI overstated its reported revenue because it utilized "manufacturing program" as the unit of accounting for its customer contracts rather than the unit of accounting expressly mandated by Topic 606, "performance obligations." ¶¶5-6. In doing so, CPI, *inter alia*, overstated its 2018 year-end assets by *200%* and reported $93.4 million in shareholders' equity when CPI actually had a shareholders' *deficit* of $7.4 million. ¶55. In addition, during 2018, CPI overstated its reported revenue by more than *19%* and reported $6.7 million in pre-tax income when CPI actually incurred a pre-tax *loss* of $7.5 million. *Id.*

**Securities Act Claims**. Since Defendants have stated that they intend to move to dismiss the Securities Act Claims only *in part*, *see* Ltr. at 3, certain of Plaintiff's claims will proceed to discovery regardless of the outcome of Defendants' motion. In their limited challenge to these claims, Defendants argue that certain alleged misstatements are opinions because they are prefaced by qualifiers, citing, for example, Defendants' representations regarding CPI's internal controls. *See id.* Defendants also contend that Plaintiff was required to, but has not, pled that Defendants had actual

---

[1] Capitalized terms have the meaning given in the Complaint. Paragraph references ("¶" and "¶¶") are to the Complaint. Emphasis is added and internal citations are omitted throughout unless otherwise indicated.

58 South Service Road   Suite 200   Melville, NY 11747   Tel 631-367-7100   Fax 631-367-1173   rgrdlaw.com

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Eric N. Vitaliano
December 2, 2020
Page 2

knowledge of the falsity of these statements. *Id.* These arguments fail, however, because a jury could reasonably find that Defendants' representations about CPI's internal controls were not premised on a detailed investigation. *See* ¶¶60–62; *Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 177 (2d Cir. 2020). Thus, even if such representations were deemed to be opinions, they were made without a reasonable basis, and, therefore, are actionable. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-190 (2015).[2]

**Exchange Act Claims**. To plead scienter, a plaintiff must allege either defendants' motive and opportunity to commit fraud or "circumstantial evidence of conscious misbehavior or recklessness." *Christine Asia Co. v. Ma*, 718 F. App'x 20 (2d Cir. 2017). On a motion to dismiss, the Court determines "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 322-23 (2007) (emphasis in original).

Viewed collectively, as required by *Tellabs*, the Complaint pleads a strong inference of scienter. CPI restated its financials and admitted that during the Class Period, it prematurely recognized revenue, in contravention of Topic 606, by utilizing "manufacturing program" rather than performance obligations as the unit of accounting for its customer contracts. Thus, by Defendants' own admission, CPI failed to adopt a fundamental provision of Topic 606. ¶41. Curiously, their use of an entirely impermissible revenue-recognition methodology inflated CPI's financials to a staggering degree. *See supra* at 1. Moreover, the nature of the material and systemic deficiencies in CPI's internal controls demonstrate that Defendants McCrosson and Palazzolo knew of, or recklessly disregarded them. ¶¶57-62, 214-216. These serious material deficiencies went undisclosed even though CPI announced a restatement earlier in the Class Period. ¶219. And fortuitously for CPI, while it had been artificially inflating its financial results, CPI was also raising needed capital in a stock offering (the "Offering"). In October 2018, CPI sold 2,760,000 shares of its stock in order to generate $16,100,000 in net proceeds in connection with the Offering,[3] which provided Defendants a powerful motive to inflate CPI's stock price. *See, e.g., In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 270 (2d Cir. 1993) (finding a sufficient pleading of motive not to disclose certain information and thereby maintain an inflated stock price when disclosure would have lessened the stock's value prior to an upcoming offering).[4] This case is unlike *In re Intercept Pharms., Inc. Sec. Litig.*, where the court found that the connection between omissions regarding a product and the defendant's offering *four months later* was too "attenuated." 2015 WL 915271, at *6 (S.D.N.Y. Mar. 4, 2015). Here, by contrast, the Offering was conducted at the same time that CPI was allegedly engaging in accounting improprieties and inflating their financials by large margins. Defendants' reliance on *Ressler v. Liz Claiborne*, 75 F. Supp. 2d 43 (E.D.N.Y. 1998), is also inapposite. *Ressler* related to the timing of executives' stock sales rather than the timing of a company's offering. *See id.* at 58.

---

[2]   Plaintiff filed proposed summonses on the Underwriter Defendants on September 25, 2020, but the summonses were not issued by the Clerk until November 30, 2020 (ECF No. 41-42). Plaintiff served the summonses earlier today.

[3]   *See* ¶65; *see also* Form 8-K, filed with the SEC on Oct. 19, 2018.

[4]   A lack of insider sales (*see* Ltr. at 2) does not demonstrate that the Offering is not probative of scienter. *See In re Valeant Pharms. Int. Inc. Sec. Litig.*, 2017 WL 1658822, at *11 (D.N.J. Apr. 28, 2017).

**Robbins Geller Rudman & Dowd LLP**

The Honorable Eric N. Vitaliano
December 2, 2020
Page 3

In addition, CPI terminated Palazzolo shortly before the end of the Class Period, and ***his replacement resigned only three months later***, on the same day CPI announced the Restatement. ¶218. The sudden departures of two CFOs at a time when CPI was disclosing accounting improprieties and internal control deficiencies bolsters the inference of scienter.[5] *See, e.g., Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 553 (S.D.N.Y. 2017) (resignations contribute to an inference of scienter). Now, CPI's financial restatement, the Offering, and the departures of its CFOs are under investigation by the SEC's Division of Enforcement. ¶63; *see In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (governmental investigation is "one piece of the puzzle when taking a 'holistic' view of the purported facts as they relate to scienter."). Viewed collectively, these allegations raise a strong inference of scienter that is at least as compelling as Defendants' competing inference – that (i) CPI's failure to adopt a fundamental provision of Topic 606, which caused its financial results to be overstated to an astounding degree, while it was engaged in capital-raising efforts; along with (ii) the material and systemic deficiencies in CPI's internal controls; (iii) the abrupt departures of two CFOs at a time when CPI was disclosing accounting improprieties and internal control deficiencies; and (iv) the commencement of an investigation by the SEC were, collectively, benign matters of coincidence.

Defendants' argument that the Restatement's "magnitude in itself does not warrant an inference of scienter" (Ltr. at 2) ignores Plaintiff's broader particularized allegations of scienter.[6] ¶¶208-228. Moreover, courts in this Circuit have consistently recognized that the magnitude of fraud is probative of scienter. *See, e.g., comScore*, 268 F. Supp. 3d at 553 (collecting cases).

Try as they might, Defendants cannot escape liability by laying blame for their wrongful conduct at the feet of CPI's auditor, particularly when CPI's SEC filings acknowledge that its "financial statements are the responsibility of the Company's management." Form 10-K, filed with the SEC on Mar. 22, 2018; *see also In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 426 (S.D.N.Y. 2013) (rejecting defense of reliance on auditor at pleading stage). The case upon which Defendants rely, *SEC v. Caserta*, 75 F. Supp. 2d 79 (E.D.N.Y. 1999), is not contrary. The *Caserta* court denied summary judgment on a fraud claim and stated, in dicta, that it is possible for a defendant to rely on an auditor to defeat scienter allegations, but only under circumstances not present here. *See id.* at 94-95. Moreover, Defendants ignore that CPI's auditor took the unusual and significant step of formally issuing an Adverse Opinion on CPI's internal controls. ¶61.

Accordingly, the Complaint adequately alleges Securities Act and Exchange Act claims.

---

[5] Defendants respond to the allegations regarding the executive resignations by analogizing this case to *In re BISYS Sec. Litig.*, but in that case, the resignations in question were to accept another opportunity. *See* 397 F. Supp. 2d 430, 446-47 (S.D.N.Y. 2005). *Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35 (2d Cir. 2018), also is inapt. There, the court did not credit the resignations of officers as indicative of fraud because "[a]mong other things, the executive in question continued to work for several months after allegedly expressing his opinion that the technology did not work and only resigned shortly before the company announced it was discontinuing its trials of PNT2258." *Id.* at 38 n.4.

[6] The cases cited by Defendants are inapposite. *See* Ltr. at 2. In *In re Turquoise Hill Res. Ltd. Sec. Litig.*, the plaintiff attempted to "rel[y] on the magnitude of the restatement ***unsupported by other factors*** that would lead to an inference of scienter." 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014). In *BISYS*, unlike here, the plaintiffs argued that "the size of the restatement ***alone*** constitutes strong evidence of *scienter*." 397 F. Supp. 2d at 447.

**Robbins Geller**
**Rudman & Dowd** LLP

The Honorable Eric N. Vitaliano
December 2, 2020
Page 4

Respectfully submitted,

*/s/ Alan I. Ellman*

Alan I. Ellman

cc:    All Counsel of Record via ECF