UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | | x |
| MARK A. RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:20-cv-00982 |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CPI AEROSTRUCTURES, INC., DOUGLAS McCROSSON and VINCENT PALAZZOLO, CANACCORD GENUITY LLC and B. RILEY FBR, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | x | |

| | | |
|---|---|---|
| RUSSELL GARRETT, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:20-cv-01026 |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CPI AEROSTRUCTURES, INC., DOUGLAS McCROSSON and VINCENT PALAZZOLO, CANACCORD GENUITY LLC and B. RILEY FBR, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | x | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF THE CLASS, AND APPROVAL OF NOTICE TO THE CLASS**

**TABLE OF CONTENTS**

**Page**

I.    HISTORY OF THE LITIGATION ............................................................................3

II.   THE SETTLEMENT TERMS.................................................................................5

III.  PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE CLASS .................................................................7

    A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ............9

    B.    The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations ...................................................................................................9

    C.    The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation .................................................................................10

    D.    The Proposed Method for Distributing Relief Is Effective....................................12

    E.    Lead Counsel's Fee and Expense Request Is Fair and Reasonable .......................13

    F.    All Class Members Are Treated Equitably Relative to Each Other .......................13

    G.    The *Grinnell* Factors Are Also Met......................................................................14

        1.    The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement.......................................................14

        2.    The Reaction of the Class to the Settlement .............................................14

        3.    The Stage of the Proceedings...................................................................14

        4.    The Risk of Establishing Liability and Damages .....................................15

        5.    The Risks of Maintaining the Class Action Through Trial........................15

        6.    The Ability of Defendants to Withstand a Greater Judgment....................15

        7.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................................16

IV.   CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE.................................................................................................16

    A.    The Class Satisfies the Requirements of Rule 23(a)..............................................17

        1.    Numerosity...............................................................................................17

**Page**

2.    Commonality...........................................................................................18

3.    Typicality ...............................................................................................19

4.    Adequate Representation .........................................................................19

B.    Rule 23(b)(3) Is Satisfied........................................................................20

1.    Common Legal and Factual Questions Predominate...............................20

2.    A Class Action Is Superior to Other Methods of Adjudication.................21

V.    NOTICE TO THE CLASS SHOULD BE APPROVED.....................................................21

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS..............................................22

VII.    CONCLUSION.....................................................................................................23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................................17, 21

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)........................................................................................................21

*Cent. States Se. & Sw. Areas Health & Welfare Fund
v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)...........................................................................................18

*City of Providence v. Aeropostale, Inc.*,
No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494
(S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73
(2d Cir. 2015)..................................................................................................................10

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995)..............................................................................................18

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001).....................................................................................8, 10, 15

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974).....................................................................................8, 14, 15

*Emerson v. Mutual Fund Series Trust, et al.*,
No. 2:17-cv-02565-SJF-SIL, slip op.
(E.D.N.Y. Sept. 9, 2020).................................................................................................13

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005).....................................................................................15

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071(HB), 2003 WL 21672085
(S.D.N.Y. July 16, 2003) .................................................................................................20

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984),
*aff'd*, 818 F.2d 145 (2d Cir. 1987)...................................................................................16

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012).............................................................................................17

**Page**

*In re Dynex Capital, Inc. Sec. Litig.*,
No. 05 Civ. 1897(HB), 2011 WL 781215
(S.D.N.Y. Mar. 7, 2011) ...................................................................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)...........................................................................19, 20

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................9, 14, 16

*In re Indep. Energy Holdings PLC Sec. Litig.*,
No. 00 Civ. 6689(SAS), 2003 WL 22244676
(S.D.N.Y. Sept. 29, 2003) ................................................................................16

*In re Initial Pub. Offering Sec. Litig.*,
243 F.R.D. 79 (S.D.N.Y. 2007) ..........................................................................9

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
No. 04 Civ. 8144(CM), 2009 WL 5178546
(S.D.N.Y. Dec. 23, 2009) .............................................................................19, 21

*In re Patriot National, Inc. Sec. Litig.*,
No. 1:17-cv-01866-ER, slip op.
(S.D.N.Y. Nov. 6, 2019) ..................................................................................13

*In re Prothena Corporation PLC Sec. Litig.*,
No. 1:18-cv-06425-ALC, 2019 WL 6528672
(S.D.N.Y. Dec. 4, 2019)..................................................................................13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................................7, 17

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514
(E.D.N.Y. Oct. 23, 2012) ..................................................................................15

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06 Civ. 11515(WHP), 2008 WL 5110904
(S.D.N.Y. Nov. 20, 2008) ..................................................................................23

*Korn v. Franchard Corp.*,
456 F.2d 1206 (2d Cir. 1972)...........................................................................18

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)...........................................................................21

**Page**

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)..................................................................................................16

*Pantelyat v. Bank of America, N.A*,
   No. 16-cv-8964 (AJN), 2019 WL 402854
   (S.D.N.Y. Jan. 31, 2019)..................................................................................................8, 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...........................................................................................................22

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ...........................................................................19, 20, 21, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)...........................................................................................7, 8, 9, 23

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §77k....................................................................................................................................3
   §77k(a)(2) ...........................................................................................................................3
   §78j(b)..................................................................................................................................3
   §78o.....................................................................................................................................3
   §78t(a) ..................................................................................................................................3
   §78u-4(b)(2)........................................................................................................................4

Federal Rules of Civil Procedure
   Rule 23 .........................................................................................................................3, 23
   Rule 23(a)............................................................................................................17, 18, 20, 21
   Rule 23(a)(1).......................................................................................................................18
   Rule 23(a)(2)...................................................................................................................18, 19
   Rule 23(a)(3).......................................................................................................................19
   Rule 23(a)(4).......................................................................................................................20
   Rule 23(b) ...........................................................................................................................17
   Rule 23(b)(3).............................................................................................................17, 20, 21
   Rule 23(e).............................................................................................................................7
   Rule 23(e)(1)......................................................................................................................1, 7
   Rule 23(e)(1)(B)....................................................................................................................7
   Rule 23(e)(2) ....................................................................................................................7, 8
   Rule 23(e)(2)(C)(i)...........................................................................................................14, 15
   Rule 23(e)(2)(D) .................................................................................................................13
   Rule 23(e)(3)........................................................................................................................8

**Page**

**SECONDARY AUTHORITIES**

Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021)..................................................................................................16

Lead Plaintiff Jeffrey L. Feinberg, individually and as trustee and beneficiary of the Jeffrey L. Feinberg Personal Trust ("Lead Plaintiff"), and on behalf of persons similarly situated, respectfully submits this memorandum of law in support of his unopposed motion for: (i) preliminary approval of the proposed Settlement between Lead Plaintiff, on behalf of himself and the proposed Class, and defendants CPI Aerostructures, Inc. ("CPI" or the "Company"), Douglas McCrosson and Vincent Palazzolo (the "Individual Defendants"), and Cannaccord Genuity LLC and B. Riley FBR (n/k/a B. Riley Securities, Inc.) (the "Underwriter Defendants") (collectively, "Defendants," and together with Lead Plaintiff, the "Parties"); (ii) certification of the proposed Class for purposes of the Settlement;[1] (iii) approval of the form and manner of the settlement notices to Members of the Class; and (iv) the scheduling of a hearing (the "Final Approval Hearing" or "Settlement Hearing") on the final approval of the Settlement, proposed Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and litigation expenses.  The Parties' agreed-upon Order Granting Preliminary Approval Pursuant to Fed. R. Civ. P. 23(e)(1) and Permitting Notice to the Class (the "Preliminary Approval Order") is filed herewith.

## PRELIMINARY STATEMENT

Lead Plaintiff and the Defendants have negotiated, at arm's length and with the assistance of an experienced and neutral mediator, a proposed settlement of all claims in this Litigation for $3.6 million in cash.  This resolution, which falls well within the range of possible approval, involved a thorough investigation, the filing of a detailed amended complaint, consultation with an expert on damages and loss causation, and a formal mediation involving rigorous and extensive negotiations.

---

[1]   As detailed more fully below, the "Class" consists of all persons who purchased CPI common stock during the Class Period (March 22, 2018 through February 14, 2020, inclusive), including purchasers of CPI common stock issued pursuant to and/or traceable to the Company's offering conducted on or about October 17, 2018.

- 1 -

The terms of the Settlement are set forth in the Stipulation of Settlement ("Stipulation"), filed herewith.[2]

Lead Plaintiff and Lead Counsel approve of the Settlement. As demonstrated at the lead plaintiff appointment stage, Lead Plaintiff has a significant financial interest in this case (ECF No. 20), oversaw the Litigation and authorized the Settlement. Lead Counsel have substantial securities litigation experience and are recognized as leaders in the field. Based upon their experience and evaluation of the facts and the applicable law, Lead Plaintiff and Lead Counsel submit that the proposed Settlement is fair, reasonable and adequate, and is in the best interests of the Class. This is especially so in light of the risk that the Class might recover substantially less (or nothing) if the action were litigated through dispositive motions, trial, and the likely post-trial motions and appeals that would follow (a process that could last several years). Indeed, Lead Plaintiff faces significant risks with regard to establishing liability and damages, including the risk that Defendants' current motion to dismiss would be successful, the class could not be certified, or that Defendants would prevail on a motion for summary judgment following lengthy and expensive fact and expert discovery. Given these and other risks inherent in this complex securities class action, and the Settlement's substantial value relative to potential maximum damages, the Settlement represents a very good result for the Class.

At this preliminary approval stage, the Court need only make a preliminary evaluation of the Settlement's fairness, such that the Class should be notified of the proposed Settlement. In light of the recovery obtained, and the risks and expenses posed by protracted litigation against the Defendants, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the

---

[2]   Unless otherwise stated or defined, all capitalized terms used herein shall have the meanings provided in the Stipulation. All emphasis is added and all citations are omitted unless otherwise noted.

Settlement and enter the Preliminary Approval Order, which will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the proposed Class for purposes of the Settlement; (iii) approve the form and content of the Notice and Summary Notice attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and publication of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (v) set a schedule and procedures for: disseminating the Notice and publication of the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the Plan of Allocation, or Lead Counsel's application for an award of attorneys' fees and litigation expenses; submitting papers in support of final approval of the Settlement; and the Settlement Hearing.

## I.    HISTORY OF THE LITIGATION

The action is currently pending before the Honorable Eric N. Vitaliano in the United States District Court for the Eastern District of New York (the "Court"), under the caption *Rodriguez v. CPI Aerostructures, Inc., et al.*, Case No. 1:20-cv-00982-ENV-CLP (the "Litigation"). The initial complaint in the Litigation was filed on February 24, 2020. On May 5, 2020, the Court appointed Lead Plaintiff and Lead Counsel.

Lead Plaintiff's Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Complaint"), filed on September 24, 2020, alleges that Defendants violated §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") and that CPI and the Individual Defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). More specifically, Lead Plaintiff alleges that, throughout the Class Period (March 22, 2018 through February 14, 2020, inclusive), Defendants misrepresented to investors that: (i) CPI's

financial statements were presented in accordance with Generally Accepted Accounting Principles ("GAAP") and governing SEC rules and regulations; (ii) CPI had implemented Accounting Standards Codification Topic 606 *Revenue From Contracts With Customers* ("ASC 606"), effective January 1, 2018; (iii) the adoption of ASC 606 did not materially change CPI's recognition of revenue under its contracts; (iv) the adoption of ASC 606 had "no impact" on CPI's consolidated financial statements; (v) management's analysis of CPI's financial condition and the results of its operations were accurate and presented in accordance with GAAP; and (vi) the Company's system of internal controls over financial reporting and disclosure controls were effective, which caused the price of the Company's common stock to trade at artificially inflated prices, until the market learned of the allegedly false and misleading statements and the Company's share price significantly declined.

On February 19, 2021, Defendants moved to dismiss the Complaint for failure to state a claim under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(b)(2). Lead Plaintiff opposed the motion on April 23, 2021. The Court has not ruled on Defendants' motion to dismiss.

On May 13, 2021, the Settling Parties participated in a confidential mediation with John R. Van Winkle, Esq., an experienced mediator. The mediation was preceded by the submission and exchange of mediation statements by the Settling Parties. The Settling Parties engaged in good-faith negotiations, but did not reach a settlement at the mediation. The Settling Parties continued to engage in arm's-length negotiations, and on May 20, 2021, reached an agreement-in-principle to resolve the Litigation, subject to the negotiation of mutually acceptable terms of a settlement agreement. The agreement-in-principle included, among other things, the Settling Parties' agreement to settle the Litigation in return for a cash payment of $3,600,000 for the benefit of the

- 4 -

Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court.  The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement, and a compromise of all matters that are in dispute, between the Settling Parties.

In light of the substantial benefit to the Class, the significant costs and risks of protracted litigation – and in recognition of the fact that the proposed Settlement is the result of arm's-length negotiations by experienced counsel overseen by a well-respected mediator – Lead Plaintiff respectfully submits that the proposed Settlement warrants preliminary approval so that notice can be provided to the Class.  Lead Plaintiff further submits that the Court should, preliminarily and for purposes of the Settlement only, certify the Class, appoint Lead Plaintiff as Class Representative, and appoint Lead Counsel as Class Counsel.

## II.    THE SETTLEMENT TERMS

The Settlement provides that CPI will pay, or cause to be paid, $3.6 million into the Escrow Account, which amount plus accrued interest comprises the Settlement Fund.  Stipulation, ¶2.2. Notice to the Class and the cost of settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund.  *Id.*, ¶2.9.  Lead Plaintiff proposes a nationally recognized class action settlement administrator, A.B. Data, Ltd., to be retained here subject to the Court's approval.

The Notice provides that Lead Counsel will submit an application, in support of final approval of the Settlement, for an award of attorneys' fees in an amount not to exceed 20% of the Settlement Amount and litigation expenses in an amount not to exceed $50,000, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund.  The Notice further explains that such fees and expenses shall be paid from the Settlement Fund.

Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount – the Net Settlement Fund – shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10.[3]  Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Class Members equitably based on the timing of their CPI stock purchases and sales.  The proposed Plan of Allocation, which is set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.

Lead Plaintiff and Defendants have entered into a Supplemental Agreement that provides that if, prior to the Final Approval Hearing, the number of CPI common shares purchased, represented by valid claims by persons who would otherwise be Members of the Class, but who request exclusion from the Class, exceeds a certain amount, CPI shall have the option to terminate the Settlement. Stipulation, ¶8.3.

In exchange for the benefits provided under the Stipulation, Class Members will release the "Released Claims," which include:

> any and all rights, liabilities, suits, debts, obligations, demands, damages, losses, judgment, matters, issues, claims (including "Unknown Claims," as defined in the Stipulation), and causes of action of every nature and description whatsoever, in law, equity, or otherwise, whether known or unknown, asserted or unasserted, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, whether arising under federal, state, local, statutory, common or foreign law, or law, or any other law, rule, or regulation, whether class and/or individual in nature, that Lead Plaintiff or any other Class Member asserted or could have asserted in the Litigation, or could in the future assert in any court or forum based upon, relating to, in connection with, or arising from the allegations, transactions, facts, matters or occurrences, errors, representations, misrepresentations, actions, failures to act, or omissions that were alleged, set forth, or referred to in the Litigation, and that relate to the purchase of

---

[3]     Given the relative strengths of Lead Plaintiff's Securities claims and his Exchange Act claims, 75% of the Settlement Fund will be allocated to Securities Act claimants and 25% of will be allocated to Exchange Act claimants.

- 6 -

CPI common stock by any Class Member during the Class Period. "Released Claims" does not include: (i) derivative claims; (ii) ERISA claims; and (iii) claims to enforce the Settlement.

The proposed Settlement is a very good recovery on the claims asserted in this Litigation, and is in all respects fair, adequate, reasonable, and in the best interests of the Class. Therefore, the Court should grant preliminary approval of the Settlement and permit notice to be provided to the Class.

## III.   PRELIMINARY APPROVAL IS WARRANTED AND WILL ALLOW LEAD PLAINTIFF TO NOTIFY THE CLASS

In the Second Circuit, there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

Federal Rule of Civil Procedure 23(e) requires judicial approval of a class action settlement. *See* Fed. R. Civ. P. 23(e) ("The claims . . . [of] a class proposed to be certified for purposes of settlement . . . may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. Pursuant to recently amended Rule 23(e)(1), the preliminary approval of a settlement is appropriate where "the parties . . . show[] that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), which governs final approval, identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

A.     the class representatives and class counsel have adequately represented the class;

B.     the proposal was negotiated at arm's length;

- 7 -

C.    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

D.    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Second Circuit considers the following factors, known as the *Grinnell* factors (some of which overlap with Rule 23(e)(2)): "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Pantelyat v. Bank of America, N.A*, No. 16-cv-8964 (AJN), 2019 WL 402854, at *3-*4 (S.D.N.Y. Jan. 31, 2019).  A proposed settlement is substantively fair if the totality of the nine *Grinnell* factors weigh in favor of that conclusion.  *See Wal-Mart*, 396 F.3d at 117 (citing *Grinnell*, 495 F.2d at 463); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the

court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

Here, Lead Plaintiff is requesting only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement. As stated above, the proposed Settlement provides a Settlement Amount of $3.6 million in cash, a substantial recovery that is unquestionably beneficial to the Class, and plainly "'within the range of possible approval.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

**A.     Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

As discussed in §IV.A.4. below, Lead Plaintiff's interests in this case are directly aligned with those of the other Class Members. Lead Plaintiff has demonstrated his ability and willingness to pursue the Litigation on the Class' behalf through his involvement in the Litigation and in approving the Settlement. Lead Plaintiff and his counsel vigorously advocated for the interests of CPI shareholders and have obtained excellent results. Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; the filing of a detailed amended complaint; consultation with an expert on damages and loss causation issues; briefing a motion to dismiss; and participation in an extensive, hard-fought mediation. The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of CPI shareholders. Accordingly, this factor weighs in favor of approval.

**B.     The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations**

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See Wal-Mart*, 396 F.3d at 116. As described above, the Settlement was reached only after extensive, arm's-length negotiations before Mr. Van Winkle, a nationally recognized mediator experienced in securities class actions. *See, e.g., D'Amato*, 236 F.3d

- 9 -

at 85 (stating that a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). After back-and-forth negotiations, the Parties reached an agreement-in-principle to settle the Litigation.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to reaching an agreement to settle. Lead Counsel conducted an extensive investigation prior to drafting and filing both the initial complaint and the Complaint, which included, among other things, a thorough review of: (i) CPI's public SEC filings; (ii) presentations, press releases, media, and analyst reports made by or about the Company; (iii) transcripts of CPI's conference calls with analysts and investors; (iv) publicly available data relating to CPI stock; (v) consultations with a damages and loss causation expert; (vi) review of other materials and data concerning the Company; (vii) consultation with a forensic accountant regarding the claims related to CPI's accounting; and (viii) research of the applicable law with respect to the claims asserted in the Litigation, and the potential defenses thereto. Lead Plaintiff and Lead Counsel therefore had an adequate basis for assessing the strength of the Class' claims and Defendants' defenses thereto when they agreed to the Settlement. These circumstances confirm the presumption of fairness of the proposed Settlement.

C.     **The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation**

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court need only determine whether the Settlement falls within a range of reasonableness that "'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs necessarily inherent in taking any litigation to completion.'" *Pantelyat*, 2019 WL 402854, at *7.

If approved, the Settlement will provide Class Members with $3.6 million in cash, less reasonable attorneys' fees, litigation expenses, Notice and Administration Expenses, Taxes, and Tax Expenses. The amount obtained for the Class represents a very good result for the Class, particularly in light of the potential maximum damages and the risk that the Court would grant the pending motion to dismiss.

Additionally, although Lead Plaintiff and Lead Counsel believe their case against Defendants is strong, they acknowledge that the Defendants have put forth substantial arguments concerning liability. Specifically, with respect to Lead Plaintiff's Exchange Act claims, Defendants have maintained that their alleged misstatements were not the product of fraud, but rather an error in the application of ASC 606 made in reliance on their auditor. Further, Defendants have taken the position that other allegations pled in the Complaint – *e.g.*, facts related to the SEC's investigation of CPI, the departure of CPI executives during the Class Period, and the magnitude of the Company's restatement – are insufficient to establish Defendants' scienter. Importantly, after Lead Plaintiff filed the Complaint, the SEC notified CPI that it did not intend to bring an enforcement action against CPI. Finally, Defendants have argued for the dismissal of certain of Lead Plaintiff's Securities Act claims contending, for example, that Defendants' SOX certifications were inactionable opinions as they contained a qualification that the statements were true based on "his or her knowledge." If any of these arguments were to be accepted in whole or in part, either at the motion to dismiss stage or at a later stage of the Litigation, any potential recovery could be eliminated or dramatically reduced. Further, Lead Plaintiff would have to prevail against Defendants at several future stages: class certification, summary judgment, and trial. And even if Lead Plaintiff

prevailed at each of those stages, he would also have to prevail on the appeals that would likely follow.

The proposed Settlement balances the risks, costs, and delays inherent in complex securities class action cases such as this one. When viewed in the context of these risks and the uncertainty of any later recovery from Defendants, the Settlement is extremely beneficial to the Class.

### D.     The Proposed Method for Distributing Relief Is Effective

The method and effectiveness of the proposed notice and claims administration process are effective. Specifically, this includes well-established procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund. The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by the publication of the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service. Also, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim and Release, Preliminary Approval Order, and all briefs and declarations submitted in support of the Settlement and the requested fees and expenses.

The claims process is also effective and includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared with the assistance of one of Lead Counsel's in-house damages consultants and estimates the amount of alleged artificial inflation in the price of CPI common stock during the Class Period.

Finally, A.B. Data, Ltd., the Claims Administrator selected by Lead Counsel subject to Court approval, will process claims, allow claimants an opportunity to cure any deficiencies in their claims

or request the Court review denial of their claims, and will distribute the Net Settlement Fund pursuant to the Court-approved Plan of Allocation. Stipulation, ¶6.

### E.    Lead Counsel's Fee and Expense Request Is Fair and Reasonable

As set forth in the Notice, Lead Counsel will apply for an award of attorneys' fees of up to 20% of the Settlement Amount, plus litigation expenses in an amount not to exceed $50,000 incurred in connection with the prosecution and resolution of this Litigation. This request is reasonable and in line with, if not below, other recent fee awards in New York federal courts. *See, e.g.*, *In re Prothena Corporation PLC Sec. Litig.*, No. 1:18-cv-06425-ALC, 2019 WL 6528672, at *1 (S.D.N.Y. Dec. 4, 2019) (awarded 30% of $15 million recovery, plus expenses); *In re Patriot National, Inc. Sec. Litig.*, No. 1:17-cv-01866-ER, slip op. at 2 (S.D.N.Y. Nov. 6, 2019) (awarded 33% of $6.5 million recovery, plus expenses); *Emerson v. Mutual Fund Series Trust, et al.*, No. 2:17-cv-02565-SJF-SIL, slip op. at 2 (E.D.N.Y. Sept. 9, 2020) (awarded 25% of $3.325 million recovery, plus expenses.)[4]

### F.    All Class Members Are Treated Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Here, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiff or any other Class Member preferentially. The Plan of Allocation, which is set out in the Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution pursuant to the Plan of Allocation depending upon whether they have

---

[4]    A motion for final approval of the Settlement and for attorneys' fees and expenses will be filed 35 days before the Settlement Hearing, and Lead Counsel will request that any fees awarded be paid when the Court executes the Judgment and an order awarding such fees and expenses. *See* Stipulation, ¶7.2.

a Securities Act claim or an Exchange Act claim. Lead Plaintiff, just like all other Class Members, will be subject to the same formulas for distribution of the Net Settlement Fund.

### G. The *Grinnell* Factors Are Also Met

#### 1. The Complexity, Expense, and Likely Duration of the Litigation Supports Approval of the Settlement

The first factor of the *Grinnell* analysis overlaps with the Rule 23(e)(2)(C)(i) factor of "the costs, risks, and delay of trial and appeal" addressed above. In addition, this case is a testament to the complexity and expense of securities class actions. Lead Plaintiff advanced numerous complex legal and factual issues under the federal securities laws. How the Court would rule on the motion to dismiss or the jury would find at trial was uncertain; this Settlement eliminates the risks of adverse decisions.

#### 2. The Reaction of the Class to the Settlement

Lead Plaintiff has participated throughout the prosecution of the case and was actively involved in the decision to enter into the Settlement. This factor is otherwise inapplicable at this stage, as notice regarding the Settlement has not yet been mailed or otherwise distributed.

#### 3. The Stage of the Proceedings

Lead Plaintiff's and Lead Counsel's knowledge of the merits and potential weaknesses of the claims alleged are certainly adequate to support the Settlement, as discussed below in §IV.B. The resultant accumulation of information permitted Lead Plaintiff and Lead Counsel to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants. *See Global Crossing*, 225 F.R.D. at 458 ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

**4.      The Risk of Establishing Liability and Damages**

The fourth *Grinnell* factor is addressed above under Rule 23(e)(2)(C)(i) ("costs, risks, and delay of trial and appeal").  For the same reasons explained above why Lead Plaintiff has satisfied the Rule 23(e)(2)(C)(i) factor, Lead Plaintiff has satisfied the fourth *Grinnell* factor.

**5.      The Risks of Maintaining the Class Action Through Trial**

Class certification motion practice had not commenced by the time of settlement.  Thus, no class had yet been certified.  Nevertheless, even assuming class certification was achieved, the Court could have revisited certification at any time – presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("the risk that the case might be not certified is not illusory").  Thus, this factor weighs in favor of preliminary approval of the Settlement.

**6.      The Ability of Defendants to Withstand a Greater Judgment**

A court may also consider a defendant's ability to withstand a judgment greater than that secured by settlement, although it is not generally one of the determining factors.  *See D'Amato*, 236 F.3d at 86.  While it is likely that Defendants here could withstand a judgment in excess of $3.6 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement, and, in fact, the ability of defendants to pay more money does not render a settlement unreasonable.  *See In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012).[5]

---

[5]      CPI is a relatively small company.  According to its Form 10-K for 2020, the aggregate market value of its stock held by non-affiliates was approximately $35 million.

- 15 -

7.      **The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed).

The Settlement here represents a very good result under the circumstances – approximately 22.5% of reasonably recoverable damages of approximately $16 million.  Lead Plaintiff's percentage recovery is even higher under Defendants' view of damages.  This is a very good result, especially when compared to the median percentage recovery in securities class actions in 2020 of 1.7%.  *See* Janeen McIntosh & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* at 20, Figure 16 (NERA Jan. 25, 2021) (the median ratio of settlement to investor losses in 2020 was 1.7%, and averaged 2% in years 2017-2019).

IV.      **CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE**

Lead Plaintiff requests that the Court certify the proposed Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The Parties have stipulated to certification of the following proposed Class:

"Class" means all Persons who purchased CPI common stock during the Class Period, including purchasers of CPI common stock issued pursuant to and/or traceable to the Company's offering conducted on or about October 17, 2018. Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of either of the Individual Defendants; (iii) any person who was an officer or director of CPI or an Underwriter Defendant during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest (provided, however, that any Investment Vehicle shall not be excluded from the Class); and (v) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded Person. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely excluded himself, herself, or itself therefrom.

The Parties further stipulate to certification of Lead Plaintiff as Class Representative for the Class, and appointment of Robbins Geller and Robbins as Class Counsel for the Class.

Certification of a class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. A class must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . ."). The proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3), there is no likelihood of abuse of the class action device, and the Settlement remains subject to the Court's approval at the Settlement Hearing.

### A.     The Class Satisfies the Requirements of Rule 23(a)

#### 1.     Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). The Second Circuit and courts within it have repeatedly held that numerosity is presumed when the proposed class would have at least 40 members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483

(2d Cir. 1995); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2011 WL 781215, at *1 (S.D.N.Y. Mar. 7, 2011).

During the Class Period, CPI had millions of shares of common stock outstanding, which traded on the New York Stock Exchange. In addition, on or about October 17, 2018, CPI conducted a public offering in which it issued over 2.7 million shares of stock. While the exact number of Members of the Class is unknown to Lead Plaintiff, Lead Plaintiff estimates that there are thousands of investors residing in a geographically disbursed area, rendering joinder impracticable.

### 2. Commonality

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Securities cases easily meet the commonality requirement, because commonality is "plainly satisfied [where] the alleged misrepresentations . . . relate to all the investors, [because] the existence and materiality of such misrepresentations obviously present important common issues." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972).

Here, the record reflects the existence of numerous common questions, including the following: (1) whether Defendants violated the federal securities laws; (2) whether Defendants misrepresented or omitted material facts concerning CPI's business and financial status; (3) whether Defendants acted with scienter; (4) whether Defendants' alleged misrepresentations and omissions caused Class Members to suffer a compensable loss; (5) whether the price of CPI's stock was artificially inflated; and (6) the extent of damages sustained by the Class, and the appropriate measure of those damages.

These and other common questions are sufficient to establish Rule 23(a)(2) "commonality." *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 106 (S.D.N.Y. 2011) (finding "commonality" established, explaining that "[t]he common questions presented by

this case – essentially, whether the Offering Documents were false or misleading in one or more respects – are clearly susceptible to common answers").

### 3.    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "'Typical' does not mean 'identical.'" *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009).

As with commonality, typicality is plainly satisfied here. Like the other Members of the Class, Lead Plaintiff alleges that he purchased CPI common stock at artificially inflated prices due to Defendants' material misstatements and omissions and was damaged when the truth emerged. Thus, the claims of Lead Plaintiff and the Class rely on the same facts and legal theories to establish liability. Accordingly, the typicality requirement is met. *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 107.

### 4.    Adequate Representation

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Flag Telecom*, 574 F.3d at 35.

Here, Lead Plaintiff's interests do not conflict with those of the Class. Rather, given that the Class was injured by the same allegedly materially false and misleading statements as Lead Plaintiff, Lead Plaintiff's interests are directly aligned with the interests of the Class. *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 110 (citing *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071(HB), 2003 WL

- 19 -

21672085, at *3 (S.D.N.Y. July 16, 2003)).  Lead Plaintiff has otherwise already demonstrated his commitment to prosecuting this Litigation on behalf of the Class.  Lead Plaintiff also retained counsel who are qualified, experienced, and able to adequately conduct the Litigation.  Lead Counsel have demonstrated that they are qualified and capable of prosecuting this Litigation, having prosecuted many securities class actions (including within this District) for many years with a proven track record of success.  *See* websites of Robbins Geller (www.rgrdlaw.com) and Robbins (www.robbinsllp.com).

Accordingly, the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are fully met in this Litigation.

## B.      Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.      Common Legal and Factual Questions Predominate

Common issues predominate where each member of a class is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct.  *See Marsh & McLennan*, 2009 WL 5178546, at *11.  As the U.S. Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud.  *Amchem*, 521 U.S. at 625.  Common issues also predominate "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

- 20 -

Here, because Class Members are subject to the same misrepresentations and omissions, and because it is alleged that Defendants' misrepresentations were part of a common course of conduct, common questions predominate. Lead Plaintiff's claims and the claims of the Class are also susceptible to common evidence and proof, because if Lead Plaintiff and each Class Member brought individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-69 (2013); *see also Merrill Lynch*, 277 F.R.D. at 114. Rule 23(b)(3)'s predominance requirement is therefore satisfied.

### 2. A Class Action Is Superior to Other Methods of Adjudication

The class action device is the superior method for resolving the claims in this Litigation. Courts have long recognized that the class action is not only a superior method, but also may be the only feasible method to fairly and efficiently adjudicate a controversy involving a large number of purchasers of securities injured by violations of the securities laws. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (stating that "most of the plaintiffs would have no realistic day in court if a class action were not available").

This class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of investors at issue here. *See Merrill Lynch*, 277 F.R.D. at 120. This is especially true in light of the fact that, without the class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to the Stipulation. Moreover, certification of the Class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

## V. NOTICE TO THE CLASS SHOULD BE APPROVED

As outlined in the agreed-upon form of proposed Preliminary Approval Order, and described above, Lead Plaintiff will notify Members of the Class by mailing the Notice and Proof of Claim and

Release to all Members of the Class who can be identified with reasonable effort, using multiple sources of data, including: (i) a list provided by CPI identifying the holders of CPI common stock during the Class Period; and (ii) a proprietary list created and maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities. The Notice will advise the Class of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses. The Notice also will provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for submitting valid and timely Proofs of Claim and Release pursuant to the proposed Plan of Allocation, objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Class.

In addition to mailing the Notice and Proof of Claim and Release, the Claims Administrator will cause publication of a Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.

The form and manner of providing notice to the Class satisfy the requirements of due process, Rule 23, and the PSLRA. In short, the Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114; *see also In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515(WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).

## VI. PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff proposes the following schedule for Settlement-related events in this case:

| Event | Proposed Due Date |
|---|---|
| Deadline for commencing mailing of the Notice and Proof of Claim and Release to the Class (which date shall be the "Notice Date") (Preliminary Approval Order, ¶10 | 21 calendar days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order, ¶11) | Up to 7 calendar days after the Notice Date |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order, ¶25) | 35 calendar days prior to Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order, ¶¶19, 21) | 21 calendar days prior to Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶5) | 100 calendar days after the date of the Preliminary Approval Order |
| Deadline for filing reply papers (Preliminary Approval Order, ¶25 | 7 calendar days prior to Settlement Hearing |
| Deadline for submitting Proof of Claim and Release forms (Preliminary Approval Order, ¶17) | 90 calendar days after the Notice Date |

## VII.    CONCLUSION

Accordingly, Lead Plaintiff respectfully requests that the Court: (i) certify the proposed Class for purposes of the Settlement; (ii) approve the proposed form and manner of notice to be given to the Class; and (iii) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Plan of Allocation and Lead Counsel's application for an award of attorneys' fees and expenses. The Parties' agreed-upon form of proposed Preliminary Approval Order, and exhibits thereto, is filed herewith.

DATED: July 9, 2021                          Respectfully submitted,

                                             ROBBINS GELLER RUDMAN
                                               & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             ALAN I. ELLMAN
                                             AVITAL O. MALINA


                                                   s/ Alan I. Ellman
                                             ALAN I. ELLMAN

- 23 -

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
aellman@rgrdlaw.com
amalina@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

ROBBINS LLP
BRIAN J. ROBBINS
STEPHEN J. ODDO
ERIC M. CARRINO
5040 Shoreham Place
San Diego, CA 92122
Telephone: 619/525-3990
619/525-3991 (fax)
brobbins@robbinsllp.com
soddo@robbinsllp.com
ecarrino@robbinsllp.com

*Lead Counsel for Lead Plaintiff*

- 24 -

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on July 9, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ Alan I. Ellman
ALAN I. ELLMAN

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail: aellman@rgrdlaw.com

# Mailing Information for a Case 1:20-cv-00982-ENV-CLP Rodriguez v. CPI Aerostructures, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey C. Block**
  jeff@blockesq.com

- **Michael G. Bongiorno**
  michael.bongiorno@wilmerhale.com,whdocketing@wilmerhale.com

- **Charles Bridge**
  charles.bridge@wilmerhale.com

- **Alan Ian Ellman**
  aellman@rgrdlaw.com,e_file_ny@rgrdlaw.com

- **Tamar Batya Kaplan-Marans**
  tamar.kaplan-marans@wilmerhale.com,tamarkm@gmail.com,whdocketing@wilmerhale.com

- **Phillip Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Benjamin Klebanoff**
  benjamin.klebanoff@shearman.com,managing-attorney-5081@ecf.pacerpro.com,karen.prosky@shearman.com,courtalert@shearman.com,manattyoffice@shearman.com

- **Daniel Craig Lewis**
  daniel.lewis@shearman.com

- **Avital Malina**
  amalina@rgrdlaw.com

- **Cassandra Mitchell**
  cassie.mitchell@wilmerhale.com

- **Stephen J. Oddo**
  soddo@robbinsllp.com,notice@robbinsllp.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,2879289420@filings.docketbird.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Samuel H. Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)