UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARK A. RODRIGUEZ, *et al.*, on behalf of
themselves and others similarly situated,

                         Plaintiffs,

            - against -

CPI AEROSTRUCTURES, INC., DOUGLAS
McCROSSON, VINCENT PALAZZOLO,
CANACCORD GENUITY LLC, and B.
RILEY FBR,

                       Defendants.
-------------------------------------------------------------X

**REPORT &
RECOMMENDATION**

20 CV 0982 (ENV) (CLP)

      On February 24, 2020, plaintiff Mark A. Rodriguez commenced this action, individually

and on behalf of all others similarly situated, alleging violations of the securities laws against

defendants CPI Aerostructures, Inc. ("CPI"), Douglas McCrosson, and Vincent Palazzolo.  CPI

produces structural aircraft parts for fixed wing aircraft and helicopters in the commercial and

defense markets.  McCrosson is CPI's Chief Executive Officer and Director of the company's

Board of Directors and Palazzolo served as CPI's Chief Financial Officer until his termination in

November 2019.

      A day after plaintiff Rodriguez filed his Complaint in this action, Russel Garrett filed a

similar suit, titled Garrett v. CPI Aerostructures, Inc., No. 1:20 CV 1026-ENV-CLP (E.D.N.Y.),

alleging violations of the securities laws against the same defendants.  The suits were later

consolidated under the instant matter (Docket No. 20 CV 0982), and, on April 22, 2021, the

Court administratively closed plaintiff Garrett's suit.

On May 5, 2020, the Court appointed plaintiff Jeffrey Feinberg, individually and as trustee and beneficiary of the Jeffrey L. Feinberg Personal Trust, to be the Lead Plaintiff in the case (hereinafter "Lead Plaintiff").  (ECF No. 24).  The Court also granted Lead Plaintiff's motion to appoint Lead Counsel.  (Id.)  On September 24, 2020, plaintiffs filed an Amended Complaint, adding defendants Canaccord Genuity LLC and B. Riley FBR, which co-underwrote a public offering made by CPI in 2018.  (Compl.[1] ¶¶ 22-24).  Plaintiffs also identified Dan Azmon as a relevant non-party to this action; he succeeded Palazzolo as CPI's Chief Financial Officer in November 2019 before resigning from that post on February 11, 2020.  (Id. ¶ 25).

The Amended Complaint brings this federal securities class action on behalf of (i) "purchasers of CPI common stock issued pursuant to and/or traceable to the Company's offering conducted on or about October 17, 2018[;]" and (ii) "purchasers of CPI common stock between March 22, 2018 through February 14, 2020, inclusive (the "Class Period").  (Compl. ¶ 1).  Plaintiffs collectively seek remedies under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (15 U.S.C. §§77k, 77l(a)(2) and 77o) (the "Securities Act"), and under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  (Id.)

On November 23, 2020, defendants moved to dismiss this case.  (ECF No. 40).  On May 20, 2021, however, they filed a letter motion reporting that the parties had reached a settlement agreement in principle and asking to stay the case pending plaintiffs' filing a motion for preliminary approval of the settlement agreement (ECF No. 52), which the Court granted on July 6, 2021.  On July 9, 2021, Lead Plaintiff, on behalf of himself and all others similarly situated,

---

[1] Citations to "Compl." refer to the Amended Complaint filed on September 24, 2020, ECF No. 35.

filed the instant unopposed motion for preliminary approval of the class action settlement, certification of the class, and approval of notice to the class.  (ECF No. 54).

For the reasons set forth below, this Court respectfully recommends that the District Court grant plaintiff's motion in its entirety by i) granting preliminary approval of the proposed settlement of this putative securities class action, pursuant to Federal Rule of Civil Procedure 23(e); (ii) certifying the proposed class for purposes of the settlement; (iii) approving the form and manner of notice of the proposed settlement to the class; and (iv) setting a date for final approval and issuing a schedule as described by Lead Plaintiff in his motion.

<u>FACTUAL BACKGROUND</u>

I.    <u>Factual Allegations</u>

According to plaintiffs, from March 22, 2018 through February 14, 2020, defendants violated sections 11, 12(a)(2), and 15 of the Securities Act of 1933 and sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by making a series of material misrepresentations in public disclosures.  (Pl.'s Mem.[2] at 3-4; Compl. ¶¶ 1, 3-4).  Plaintiffs claim that defendants were aware of the alleged misrepresentations or recklessly disregarded them.  (Compl. ¶¶ 208-229).

Specifically, according to plaintiffs, defendants misrepresented to investors that (i) CPI's financial statements were presented in accordance with Generally Accepted Accounting Principles ("GAAP") and governing Securities and Exchange Commission ("SEC") rules and regulations; (ii) CPI had implemented Accounting Standards Codification Topic 606 *Revenue*

---

[2] Citations to "Pl.'s Mem." refer to Lead Plaintiff's Memorandum of Law filed in support of the unopposed motion for preliminary approval of the class action settlement, certification of the class, and approval of notice to the class on July 9, 2021, ECF No. 54-1.

*From Contracts With Customers* ("ASC 606"),[3] effective January 1, 2018; (iii) the adoption of

ASC 606 did not materially change CPI's recognition of revenue under its contracts; (iv) the

adoption of ASC 606 had not changed CPI's consolidated financial statements; (v)

management's analysis of CPI's financial condition and the results of its operations were

accurate and presented in accordance with GAAP; and (vi) CPI's system of internal controls over

financial reporting and disclosure controls were effective.  (Pl.'s Mem. at 3-4; Compl. ¶¶ 1, 3-4).

On February 14, 2020, CPI announced that the financial information that it had disclosed

during the Class Period was inaccurate and that the company had overstated its revenue and net

income by nearly one million dollars each.  (Compl. ¶¶ 4, 158, 202).  As a result, CPI's stock

price plummeted, damaging investors.  (Compl. ¶¶ 160, 201, 206-207).

Although defendants agree to the settlement and do not oppose the instant motion, they

continue to deny "each and all of the claims and contentions" that plaintiffs allege, "as well as

any and all allegations of fault, liability, wrongdoing, or damages whatsoever arising out of any

of the conduct, statements, acts, or omissions that have been alleged, or that could have been

alleged, in the [l]itigation."  (Stip.[4] at 2).  Defendants also contend that plaintiffs' claims are

without merit, that defendants have meritorious defenses upon which they would prevail at trial,

and that the "[l]itigation itself should not be certified as a class action for purposes of trial or

adjudication of liability and damages."  (Id.)  Thus, for purposes of settlement only, defendants

have stipulated to the certification of the proposed class.  (Id. ¶ 3.1).

---

[3] ASC 606 is a method of calculating revenue introduced by the Financial Accounting Standards Board in 2014. (Compl. ¶ 40).  The core principle of ASC 606 "is that an entity should recognize revenue to depict the transfer of goods or services to customers in an amount that reflects the consideration that the entity expects to be entitled to in exchange for those goods or services."  (Id. ¶ 41).
[4] Citations to "Stip." refer to the stipulation of settlement, filed with this Court on July 9, 2021, ECF No. 54-2.

II.   <u>Proposed Settlement Agreement</u>

The parties have agreed to settle "all claims in this [l]itigation for $3.6 million in cash." (Pl.'s Mem. at 1).  Lead Plaintiff claims that the agreed-upon settlement amount falls "well within the range of possible approval," and was arrived at after investigation, consultation with an expert on damages and loss causation, and mediation "involving rigorous and extensive negotiations."  (<u>Id.</u>)  Lead Plaintiff and Lead Counsel agree that the proposed settlement is "fair, reasonable and adequate, and is in the best interests of the [proposed] [c]lass." (<u>Id.</u> at 2).

On July 9, 2021, the parties submitted a signed settlement stipulation for the Court's review along with the motion for settlement approval, which the District Court referred to the undersigned.  The Settlement Agreement's terms are discussed below where necessary.

DISCUSSION

In his motion for settlement approval, Lead Plaintiff seeks (i) preliminary approval of the Settlement Agreement to which the parties have stipulated; (ii) certification of the proposed class for purposes of the settlement; (iii) approval of the form and content of the notice and summary notice that will be issued to the class members; (iv) approval of the Lead Plaintiff's proposed procedures for distribution of the notice and publication of the summary notice; and (v) establishment of a schedule and procedures for disseminating the notice and publication of the summary notice, requesting exclusion from the class, objecting to the settlement, a plan for allocating the settlement and determining Lead Counsel's application for an award of attorney's fees and litigation expenses, the submission of papers in support of final approval of the settlement, and the scheduling of a Settlement Hearing.  (<u>Id.</u> at 2-3).

Defendants do not oppose Lead Plaintiff's motion.

5

I.    <u>Preliminary Approval of the Proposed Settlement</u>

Approval of a class action settlement involves a two-step process. First, the court preliminarily approves the proposed settlement by evaluating the written submissions and informal presentation of the settling parties and the negotiating process leading to the settlement. <u>Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.</u>, 396 F.3d at 116. Second, the court holds a hearing to "determine whether the settlement's terms are fair, adequate, and reasonable[.]" <u>Capsolas v. Pasta Res., Inc.</u>, No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012). In evaluating a proposed settlement in order to grant preliminary approval, the court need only find that there is "probable cause" to submit the settlement to the class members and to hold a fairness hearing. <u>Hernandez v. Merrill Lynch & Co.</u>, No. 11 CV 8471, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012) (quoting <u>In re Traffic Exec. Ass'n E. R.Rs.</u>, 627 F.2d 631, 634 (2d Cir. 1980)).

To grant preliminary approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." <u>Joel A. v. Giuliani</u>, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); <u>see</u> Fed. R. Civ. P. 23(e). Whether a settlement is fair is a determination within the court's sound discretion. <u>Levitt v. Rodgers</u>, 257 F. App'x 450, 453 (2d Cir. 2007) (citing <u>In re Ivan F. Boesky Sec. Litig.</u>, 948 F.2d 1358, 1368 (2d Cir. 1991)). Judicial policy favors the settlement and compromise of class actions. <u>Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.</u>, 396 F.3d 96, 116-17 (2d Cir. 2005); <u>see also</u> <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 535 (3d Cir. 2004). "When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher

degree of scrutiny in assessing its fairness."  D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

In determining whether a proposed settlement is fair, courts must analyze whether the agreement is (i) procedurally fair and (ii) substantively fair.  Id.

A.  Analysis of Procedural Fairness

A settlement is procedurally fair when it is "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests."  Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013).  In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'"  Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

Lead Plaintiff claims that his decision to settle in this case was "informed by a thorough investigation of the relevant claims; the filing of a detailed amended complaint; consultation with an expert on damages and loss causation issues; briefing a motion to dismiss [sic]; and participation in extensive, hard-fought mediation."  (Pl.'s Mem. at 9)  Moreover, Lead Plaintiff represents that the settlement was arrived at through good-faith, arm's-length negotiations through informed counsel and aided by a "nationally recognized mediator experienced in securities class actions."  (Id. at 9-10).

This Court finds that the parties' Settlement Agreement was negotiated at arm's-length and in good faith.  Moreover, the parties' involvement in mediation in this case "helps to ensure that the proceedings were free of collusion and undue pressure."  D'Amato v. Deutsche Bank, 236 F.3d at 85 (citing County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1323 (2d Cir. 1990)).  Thus, given the presumption of fairness when a class settlement has been reached after arm's-length negotiations between experienced, capable counsel, see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.  See Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017).

B.  Substantive Fairness

This Court now turns to determining whether, in addition to being procedurally fair, the proposed Settlement Agreement is substantively fair.  In City of Detroit v. Grinnell Corp., the Second Circuit enumerated nine factors to guide courts in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche

Bank, 236 F.3d at 86; Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

Although the Court is not required to make a finding of fairness as to the underlying settlement at this time, the Grinnell factors are instructive in determining whether to grant preliminary approval of the settlement.  See Torres v. Gristede's Operating Corp., Nos. 04 CV 3316, 08 CV 8531, 08 CV 9627, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (noting that "[p]reliminary approval of a Settlement Agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties") (internal quotation marks and citations omitted).

1.   Complexity, Expense and Likely Duration of the Litigation

According to Lead Plaintiff, defendants have advanced "substantial" arguments contesting their liability in this matter.  (Pl.'s Mem. at 11).  Specifically, defendants argue that their alleged misstatements were caused by "an error in the application of ASC 606 made in reliance on their auditor[,]" and that they lack sufficient scienter to be held liable.  (Id.)  In fact, after plaintiffs filed the Amended Complaint, the SEC notified CPI that it did not intend to bring an enforcement action against the company.  (Id.)  In addition, defendants have argued that some of the claims contained in the Amended Complaint are not actionable.  (Id.)  As Lead Plaintiff observes, "[i]f any of these arguments were to be accepted in whole or in part, either at the motion to dismiss stage or at a later stage of the [l]itigation, any potential recovery could be eliminated or dramatically reduced." (Id.)

Moreover, plaintiffs would need to prevail against the defendants "at several future stages: class certification, summary judgment, and trial" as well as on appeal.  (Id. at 11-12).

Accordingly, "[t]he proposed Settlement balances the risks, costs, and delays inherent in complex securities class action cases such as this one." (Id. at 12).

This Court agrees and finds that the first Grinnell factor favors the proposed settlement agreement.

>    2.    The Reaction of the Class to the Settlement

The reaction of the class to the settlement may only be evaluated after notice of the proposed settlement has been sent to the class and the time for objections has passed. In this case, notice of the proposed settlement has not yet been distributed to the class, as the class has not yet been certified. As Lead Plaintiff acknowledges, this factor is thus "inapplicable" at this stage of the case. (Pl.'s Mem. at 14). Therefore, this factor is neutral. Parker v. City of New York, 2017 WL 6375736, at *6.

>    3.    The Stage of the Proceedings and the Amount of Discovery Completed

The third factor exists to ensure "that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them and the risks of maintaining the class action through trial." Klein ex rel. Ira v. PDG Remediation, Inc., No. 95 CV 4954, 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28, 1999) (internal quotation marks and citations omitted). While formal discovery has not occurred in this case, Lead Plaintiff and Lead Counsel claim that their "knowledge of the merits and potential weaknesses of the claims alleged are certainly adequate to support the Settlement[.]" (Pls. Mem. at 14). Plaintiffs filed an exhaustive Amended Complaint in this case and defendants responded with a motion to dismiss, apprising plaintiffs of the defendants' position. Moreover, Lead Plaintiff and his counsel engaged in extensive negotiations with the defendants with the aid of a mediator. Given these factors, this

Court finds that the third Grinnell factor supports the proposed Settlement.  See Caballero v. Zaloumis Contracting Serv., Inc., No. 11 CV 1121, 2013 WL 646656, at *3 (S.D.N.Y. Feb. 20, 2013) (finding that extensive arm's-length negotiations supported settlement under this factor); Levinson v. About.Com Inc., No. 02 CV 2222, 2010 WL 4159490, at *3 (S.D.N.Y. Oct. 7, 2010) (finding that settlement negotiations overseen by a mediator supported settlement under this factor).

    4.   The Risks of Establishing Liability and Damages and Maintaining the Action Through Trial

Although Lead Plaintiff believes that plaintiffs' case is "strong" (see Pl.'s Mem. at 11), he acknowledges that defendants have raised colorable arguments in their motion to dismiss, and that establishing liability and continuing litigation through trial in a complex class action such as this inherently involves risk and uncertainty.  (Id.)  Moreover, as Lead Plaintiff is aware, while no class yet exists in this case, if class certification is granted, the Court could revisit that decision at any time "presenting a continuous risk that this case, or particular claims, might not be maintained on a class-wide basis through trial."  (Id. at 15 (citing Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005))).  In addition, a trial on the merits would involve resolution of liability issues that have yet to be litigated to conclusion and would likely involve an appeals process, both of which pose a risk of uncertainty with respect to the outcome and duration of this litigation, as noted above.

The proposed settlement eliminates these risks, and thus the fourth, fifth, and sixth Grinnell factors favor the settlement.

5.   The Ability of the Defendants to Withstand a Greater Judgment

Lead Plaintiff acknowledges that the defendants could withstand a judgment exceeding

$3.6 million, but he explains that "courts generally do not find the ability of a defendant to

withstand a greater judgment to be an impediment to settlement when the other factors favor the

settlement, and, in fact, the ability of defendants to pay more money does not render a settlement

unreasonable." (Id. (citing In re Vitamin C Antitrust Litig., No. 06 MD 1738, 2012 WL

5289514, at *6 (E.D.N.Y. Oct. 23, 2012)); see also Parker v. City of New York, 2017 WL

6375736, at *7 (internal citations omitted).  Lead Plaintiff also notes that CPI is a "relatively

small company," with an aggregate market value of "approximately" $35 million.  (Id. at 15 n.5).

This Court finds that this factor is neutral and does not prevent approval of the proposed

settlement.

6.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible
      Recovery

"The dollar amount of the settlement by itself is not decisive in the fairness

determination" under this factor.  In re Agent Orange Prod. Liab. Litig., 597 F. Supp. 740, 762

(E.D.N.Y. 1984), aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381, 818 F.2d

145 (2d Cir. 1987).  What constitutes a reasonable settlement amount "is not susceptible of a

mathematical equation yielding a particularized sum," but turns on whether the settlement falls

within "a range of reasonableness."  In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 104,

130 (S.D.N.Y.), aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships Litig., 117 F.3d 721 (2d

Cir. 1997) (internal citations and quotation marks omitted).

"It is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery will not per se render the settlement inadequate or unfair."  Johnson v. Brennan, No. 10

12

CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). This flows from the fact that "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." In re Agent Orange Prod. Liab. Litig., 597 F. Supp. at 762. "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." City of Detroit v. Grinnell Corp., 495 F.2d at 455; see In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Here, the settlement amount of $3.6 million represents "approximately 22.5% of reasonably recoverable damages of approximately $16 million[,]" and is "even higher under [d]efendants' view of damages." (Pl.'s Mem. at 16). Lead Plaintiff claims that this is a "very good result under the circumstances." (Id.) Given the risks that plaintiffs would face if they were to proceed to trial as articulated above, this Court agrees: This factor favors the settlement as well.

Given the foregoing discussion of the Grinnell factors, the Court finds that the total award is fair and reasonable.

## II. Proposed Class

Lead Plaintiff requests that the Court certify the proposed class for purposes of the settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. (Id.) The parties have stipulated that the class should consist of:

> all Persons who purchased CPI common stock during the Class Period, including purchasers of CPI common stock issued pursuant to and/or traceable to the Company's offering conducted on or about October 17, 2018. Excluded from the Class are: (i) Defendants; (ii)

13

>members of the immediate family of either of the Individual
>Defendants; (iii) any person who was an officer or director of CPI
>or an Underwriter Defendant during the Class Period; (iv) any firm,
>trust, corporation, or other entity in which any Defendant has or had
>a controlling interest (provided, however, that any Investment
>Vehicle shall not be excluded from the Class); and (v) the legal
>representatives, affiliates, heirs, successors-in-interest, or assigns of
>any such excluded Person. Also excluded from the Class is any
>Person who would otherwise be a Member of the Class but who
>validly and timely excluded himself, herself, or itself therefrom.

(Stip. ¶ 1.6). The parties further stipulate that Lead Plaintiff should be appointed class

representative, and Lead Plaintiff's counsel should be appointed Class Counsel. (Pls. Mem at

17).

    A. <u>The Requirements of Rule 23(a)</u>

    Under Rule 23(a):

>One or more members of a class may sue or be sued as representative
>parties on behalf of all members only if: [(i)] the class is so
>numerous that joinder of all members is impracticable; [(ii)] there
>are questions of law or fact common to the class; [(iii)] the claims
>or defenses of the representative parties are typical of the claims or
>defenses of the class; and [(iv)] the representative parties will fairly
>and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

    In <u>Wal-Mart Stores, Inc. v. Dukes</u>, the Supreme Court discussed the requirements of Rule

23, stating the following:

>Rule 23 does not set forth a mere pleading standard. A party seeking
>class certification must affirmatively demonstrate his compliance
>with the Rule. . . . We recognized in <u>Falcon</u> that "sometimes it may
>be necessary for the court to probe behind the pleadings before
>coming to rest on the certification question," and that certification is
>proper only if "the trial court is satisfied, after a rigorous analysis,
>that the prerequisites of Rule 23(a) have been satisfied." [<u>General</u>

Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160–61 (1982)].

564 U.S. 338, 350–51 (2011) (citations omitted).

Following the decision in Wal-Mart Stores, Inc. v. Dukes, the Second Circuit determined that "[t]he party seeking certification must establish [Rule 23's] requirements by a preponderance of the evidence." Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 119 (2d Cir. 2014) (citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008)).  A district court must conduct a "rigorous analysis" that may "overlap with the merits of the plaintiff's underlying claims." Jacob v. Duane Reade, Inc., 602 Fed.Appx. 3, 5 (2d Cir. 2015) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350–51).  The court must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 33 (2d Cir. 2006); see also Kurtz v. Kimberly-Clark Corp., No. 14 CV 1142, 2017 WL 1155398, at *34 (E.D.N.Y. Mar. 27, 2017).

In this case, Lead Plaintiff argues that the settlement class meets "all the requirements" for class certification and there is "no likelihood of abuse of the class action device[.]"  (Pl.'s Mem. at 17).

1. Numerosity

Lead Plaintiff contends that the proposed class satisfies the numerosity requirement of Rule 23(a)(1).  (Pl.'s Mem. at 17-18).  As the Second Circuit has noted, "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.), cert denied, 115 U.S. 2277 (1995); Pennsylvania Public Sch. Emp's Ret. Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 120 (2d Cir. 2014); see also Alleyne v. Time Moving &

Storage Inc., 264 F.R.D. 41, 48 (E.D.N.Y. 2010).  "In securities fraud class actions relating to

publicly owned and nationally listed corporations, the numerosity requirement may be satisfied

by a showing that a large number of shares were outstanding and traded during the relevant

period."  Pearlstein v. BlackBerry Ltd., No. 13 CV 7060, 2021 WL 253453, at *7 (S.D.N.Y. Jan.

26, 2021) (internal quotation marks and citations omitted).

Lead Plaintiff observes that, during the Class Period, CPI had "millions of shares of

common stock outstanding, which traded on the New York Stock Exchange."  (Pl.'s Mem. at

18).  Moreover, CPI issued "over 2.7 million shares of stock" during its October 2018 public

offering.  (Id.)  Thus, while Lead Plaintiff does not know the "exact" number of class members,

he estimates that there are "thousands" of investors residing in geographically disparate areas

that would be included in the class, thus "rendering joinder impracticable."  (Id.)  This Court

agrees and finds that Rule 23(a)'s numerosity requirement is met here.

2.  Commonality

Rule 23(a)(2) requires plaintiffs to demonstrate that common questions of law or fact

affect all class members.  Fed. R. Civ. P. 23(a)(2).  "[A] common question is one where the same

evidence will suffice for each member to make a prima facie showing or the issue is susceptible

to generalized class-wide proof."  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016)

(internal quotation, alteration, and citation omitted).  That is, the common questions "must be of

such a nature that" they are "capable of classwide resolution—which means that determination

of [their] truth or falsity will resolve an issue that is central to the validity of each one of the

claims in one stroke."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. at 350; see also Marisol A. v.

Guiliani, 126 F.3d 372, 377 (2d Cir. 1997).

As Lead Plaintiff observes and as is typical of most securities fraud class actions, this case raises common questions of law and fact, including issues concerning (i) whether defendants violated the securities laws; (ii) whether defendants' public statements during the Class Period misrepresented or omitted material facts; (iii) whether defendants acted with scienter; (iv) whether defendants' alleged misrepresentations and omissions caused compensable losses; (v) whether CPI's stock price was artificially inflated; and (vi) the extent of the class damages.  (Pl.'s Mem. at 18); see also Pearlstein v. BlackBerry Ltd., 2021 WL 253453, at *7 (citing Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 474–75 (2013)); In re Allergan PLC Sec. Litig., No. 18 CV 12089, 2021 WL 4077942, at *6 (S.D.N.Y. Sept. 8, 2021). Rule 23(a)(2)'s commonality requirement is therefore satisfied here.

3.  Typicality

Typicality requires that the claims of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3).  To satisfy this requirement, the party seeking certification must show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation and citation omitted).  "In a securities class action, when 'plaintiffs will necessarily seek to develop facts relating to . . . the dissemination of allegedly false or misleading statements underlying their claims,' the claims and nature of evidence 'are generally considered sufficient to satisfy the typicality requirement.'" In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig., 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (quoting in re Vivendi Universal, S.A.

Sec. Litig., 242 F.R.D. 76, 85 (S.D.N.Y. 2007), aff'd sub nom. In re Vivendi, S.A. Sec. Litig., 838 F.3d 223 (2d Cir. 2016)).

Lead Plaintiff claims that "typicality is plainly satisfied here[,]" and points to the putative class members' allegations that they purchased stock at "artificially inflated prices due to [d]efendants' material misstatements and omissions and w[ere] damaged when the truth emerged." (Pl.'s Mem. at 19). Thus, according to Lead Plaintiff, the class members' claims will rely on the same facts and legal theories. (Id.)

This Court agrees and finds typicality here.

4. Adequate Representation

To satisfy Rule 23(a)(4), which requires that the interests of the class be adequately represented, the Second Circuit has established a two-pronged test. First, there must be a showing that class counsel is "qualified, experienced and able to conduct the litigation." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d at 35 (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)). Second, the named plaintiffs' interests must not be "antagonistic to the interest of other members of the class." Id. (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d at 60); see also Hill v. City of New York, 136 F. Supp. 3d 304, 356 (E.D.N.Y. 2016). That is, the named plaintiffs must "possess the same interests and suffer the same injuries as the class members." In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 249 (2d Cir. 2011) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. at 625–26).

The focus of the inquiry is uncovering "conflicts of interest between named parties and the class they seek to represent." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d at 35

18

(quoting Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997)).  Where conflict exists, however, it "must be fundamental" to defeat a motion for class certification.  Id. (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145 (2d Cir. 2001)).

Lead Plaintiff claims that his interests do not conflict with the class "given that the [c]lass was injured by the same allegedly materially false and misleading statements as Lead Plaintiff," and, as such, "Lead Plaintiff's interests are directly aligned with the interest of the [c]lass." (Pl.'s Mem. at 19 (internal citations omitted)).  Moreover, according to Lead Plaintiff, he has "demonstrated his commitment to prosecuting this [l]itigation on behalf of the [c]lass."  (Id. at 19-20).  Lead Plaintiff further contends that Lead Counsel is "qualified, experienced, and able to adequately conduct the [l]itigation" as evidenced by counsel's "proven track record of success[,]" and has supplied links to counsel's websites.  (Id. at 20).

This Court finds that the proposed class would be adequately represented by Lead Plaintiff and Lead Counsel, as evinced by their efforts at prosecuting the case to settlement, and nothing in the record supports a contrary finding.  See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 253 (2d Cir. 2011); see also Parker v. City of New York, 2017 WL 6375736, at *10.  Thus, this factor is satisfied as well.

### 5. Ascertainability

Although it is not an enumerated Rule 23(a) factor, "[m]ost . . . circuit courts of appeals have recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable," often characterized as "an 'ascertainability' requirement." In re Petrobras Sec., 862 F.3d 250, 264 (2d Cir. 2017) (quoting Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 995 (8th Cir. 2016)); Hughes v. The Ester C Co., 317 F.R.D.

333, 348-49 (E.D.N.Y. 2016).  This implied requirement is designed to prevent the certification

of a class whose membership is "truly indeterminable[,]"  In re Facebook, Inc., IPO Sec. &

Derivative Litig., 312 F.R.D. 332, 353 (S.D.N.Y. 2015) (internal quotation and citations

omitted), and "requires only that a class be defined using objective criteria that establish

membership with definite boundaries."  In re Petrobras Sec., 862 F.3d at 264.

Here, the proposed class definition clearly delineates the boundaries of the class by the

dates of investors' purchase of CPI's stock.  Therefore, "[a]scertaining the members of the class

will be easily administrable by references to investor records."  Pearlstein v. BlackBerry Ltd.,

2021 WL 253453, at *13.

Thus, this Court determines that plaintiffs have satisfied the requirements of Rule 23

(a)(1)-(4) as well as the implied requirement of ascertainability.

B.  The Requirements of Rule 23(b)

In addition to satisfying the prerequisites of Rule 23(a), "the district court must be

satisfied that certification is appropriate under Rule 23(b)."  Roach v. T.L. Cannon Corp., 778

F.3d 401, 405 (2d Cir. 2015) (citing Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013)).

The court may grant certification under Rule 23(b) if both "questions of law or facts common to

class members predominate over any questions affecting only individual members" and "a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."  Id.  (quoting Fed. R. Civ. P. 23(b)(3)).

Lead Plaintiff claims that the proposed class meets Rule 23(b)(3)'s requirements.  (See

Pl.'s Mem. at 20).

1. Predominance

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Waggoner v. Barclays PLC, 875 F.3d 79, 93 (2d Cir. 2017) (quoting Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015)). This requirement is "far more demanding" than the commonality requirement under Rule 23(a). Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623–24 (1997). The predominance inquiry is designed to test the proposed class's cohesiveness, and thus requires that the court "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. at 453 (internal quotations and citations omitted). This is a qualitative—not quantitative—inquiry, where the Court "must account for the nature and significance of the material common and individual issues in the case." In re Petrobras Sec., 862 F.3d at 271.

Moreover, common issues, such as liability, may be certified even where other issues, such as damages, "do not lend themselves to classwide proof." Parker v. City of New York, 2017 WL 6375736, at *10 (citing In re Nassau Cty. Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006)). To the extent that individual defenses "may affect different class members differently," their existence "does not compel a finding that individual issues predominate over common ones." In re Nassau Cty. Strip Search Cases, 461 F.3d at 225 (internal citations and quotation marks omitted). Thus, the central question in deciding whether to certify a Rule 23(b)(3) class is whether "resolution of some of the legal or factual questions that qualify each

class member's case as a genuine controversy can be achieved through generalized proof" and whether "these particular issues are more substantial than the issues subject only to individualized proof." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks and citations omitted).

Lead Plaintiff claims that, because the putative class members were "subject to the same misrepresentations and omissions, and because it is alleged that [d]efendants' misrepresentations were part of a common course of conduct, common questions predominate." (Pl.'s Mem. at 21). "[I]f Lead Plaintiff and each [c]lass [m]ember brought individual actions, they would each be required to prove the same wrongdoing by [d]efendants in order to establish liability." (Id. (citing Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. at 466-69; Public Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co., 277 F.R.D. 97, 114 (S.D.N.Y. 2011)).

The Court agrees with Lead Plaintiff and, accordingly, finds that plaintiffs have satisfied the predominance requirement of Rule 23(b)(3).

### 2. Class Action as a Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal quotation marks omitted). The Rule requires the Court to consider:

> [(i)] the class members' interests in individually controlling the prosecution or defense of separate actions; [(ii)] the extent and nature of any litigation concerning the controversy already begun by or against class members; [(iii)] the desirability or undesirability of

22

concentrating the litigation of the claims in the particular forum; and
[(iv)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); see also Pagan v. Abbott Labs., Inc., 287 F.R.D. 139, 147 (E.D.N.Y. 2012). "[F]ailure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." In re Petrobras Sec., 862 F.3d at 268 (internal citation omitted).

Lead Plaintiff claims that proceeding as a class action in this case is "clearly 'superior to other available methods for fairly and efficiently adjudicating' the federal securities law claims of the large number of investors at issue here." (Pl.'s Mem. at 21 (citing Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co., 277 F.R.D. at 120)). Lead Plaintiff argues that, "without the class device, [d]efendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to the [s]tipulation." (Id.) In addition, Lead Plaintiff observes that approval of class certification "will allow the [s]ettlement to be administered in an organized and efficient manner." (Id.)

The Court agrees with Lead Plaintiff that class certification better serves the interests of judicial economy and is a superior means of resolving this matter when compared with protracted litigation. Thus, the Court agrees with plaintiffs that the Rule 23(b)(3) factors weigh in favor of granting class certification.

C. Conclusion

Given the above reasoning, the Court finds that plaintiffs have satisfied the requirements of Rules 23(a) and 23(b)(3) as to the proposed settlement class. Therefore, pursuant to the parties' stipulation and Lead Plaintiff's unopposed motion, the Court respectfully recommends that the District Court conditionally certify a settlement class as defined on page five of the

party's stipulation, consisting of all persons who purchased CPI common stock during the period

from March 22, 2018 through February 14, 2020, including purchasers of CPI common stock

issued pursuant to and/or traceable to the company's offering conducted on or about October 17,

2018.  (Stip. ¶¶ 1.6, 1.8).

Moreover, the Court recommends that—as articulated in the parties' proposed Order

(Pl.'s Mem. at 17; Proposed Order[5] ¶ 4)—in conditionally certifying the class, the District Court

appoint Lead Plaintiff as Class Representative and appoint Lead Counsel as Class Counsel. Lead

Plaintiff and Lead Counsel have performed substantial work in this litigation identifying,

investigating, prosecuting, and settling the claims on behalf of the affected individuals and there

is no evidence here that Lead Plaintiff or Lead Counsel has any antagonistic interests or that

there would be anything that would hinder their ability to act on behalf of the class.  Denney v.

Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006); Fed. R. Civ. P. 23(g).

III.   Form and Manner of Notice

Pursuant to the Federal Rules of Civil Procedure, when parties propose a settlement, the

"court must direct notice [of the settlement] in a reasonable manner to all class members who

would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Under Rule 23(e)(1), the "'[c]ourt

has virtually complete discretion as to the manner of giving notice to class members.'"  In re

MetLife Demutualization Litig., 689 F. Supp. 2d at 345 (quoting Handschu v. Special Servs.

Div., 787 F.2d 828, 833 (2d Cir. 1986)).

---

[5] Citation to "Proposed Order" refer to the Proposed Order Granting Preliminary Approval Pursuant to Fed. R. Civ.
P. 23(e)(1) And Permitting Notice to the Class attached as Exhibit A to the parties' stipulation, filed along with Lead
Plaintiff's motion for conditional settlement approval on July 9, 2021, ECF No. 54-2.

In addition to notice of a proposed settlement, Rule 23 also either requires or permits courts to provide notice of the class proposed to be certified, depending on the type of class action proceeding.  See Fed. R. Civ. P. 23(c)(2).  In a Rule 23(b)(3) class action such as this, the court "must direct . . . the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule further provides that notice to such classes must "concisely and clearly" state:

> the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Id.

In Eisen v. Carlisle & Jacquelin, the Supreme Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort.  417 U.S. at 173-76 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177.  Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kenrick, 698 F.2d at 70).

In this case, Lead Plaintiff proposes notifying class members of the class action by mailing a notice and proof of claim and release to all class members who can be identified, with "reasonable" effort, using sources of data including:

> (i) a list provided by CPI identifying the holders of CPI common stock during the [c]lass [p]eriod; and (ii) a proprietary list created and maintained by the Claims Administrator of the largest and most common U.S. banks, brokers, and other nominees, and the Depository Trust Company, which acts as a clearinghouse to process and settle trades in securities.

(Pl.'s Mem. at 22).

According to Lead Plaintiff, the notice will advise the Class of: "(i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for an award of attorneys' fees and expenses[,]" as well as

> specifics on the date, time, and place of the Settlement Hearing and set forth the procedures for submitting valid and timely Proofs of Claim and Release pursuant to the proposed Plan of Allocation, objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the [c]lass

(Id.; see also Notice of Pendency and Proposed Settlement of Class Action, attached as Exhibit A-1 to Stip., ECF No. 54-2).

In addition to sending notices and proof of claim and release forms to the class members, Lead Plaintiff also intends to publish a summary notice in the national edition of the *Wall Street Journal* and once over a national newswire service no later than seven days after the notice is mailed to potential class members. (Pl.'s Mem. at 11, 22; see also Proposed Order ¶¶ 10, 11).

The Court finds that the proposed notice is reasonable and adequate. It is detailed enough to inform the class members of their rights and obligations, and the proposed methods of notice,

including publishing the summary notice in the *Wall Street Journal* and sending it once over a national newswire, are practical and likely to be effective in reaching the affected individuals. See Weinberger v. Kendrick, 698 F.2d at 72 (stating that mailing individual notices to class members at their last known addresses was a sufficient means of notification under the circumstances); In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig., 246 F.R.D. 156, 166 (S.D.N.Y. 2007) (finding the dissemination of notice through mail and publication reasonable). As such, the Court respectfully recommends that the District Court approve the proposed notice, summary notice, and proposed forms of distributing the notice and summary notice.

The Court has also reviewed the proposed proof of claim and release form (Stip., Ex. A-2).  The Court finds that the proposed form effectively advises class members of their rights and options and, in conjunction with the proposed notice, vindicates the purpose of Rule 23(c)(2)(B). The Court therefore respectfully recommends that the District Court approve the proposed form.

IV.    Scheduling

This Court respectfully recommends that the District Court also adopt Lead Plaintiff's proposed schedule (Pl.'s Mem. at 22-23) and set a settlement hearing for 100 calendar days after the date of the District Court's Order.

CONCLUSION

This Court respectfully recommends that the District Court grant Lead Plaintiff's motion in its entirety.  This includes i) granting preliminary approval of the proposed settlement of this putative securities class action, pursuant to Federal Rule of Civil Procedure 23(e); (ii) certifying the proposed class for purposes of the settlement; (iii) approving the form and manner of notice

of the proposed settlement to the class; and (iv) approving the schedule proposed by Lead

Plaintiff in his motion, including setting the date for final approval.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also

Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections

within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor

v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a

. . . report [and recommendation] operates as a waiver of any further judicial review of the

magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically

through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      November 9, 2021

                                         /s/ Cheryl L. Pollak
                                         Cheryl L. Pollak
                                         Chief United States Magistrate Judge
                                         Eastern District of New York