UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARK A. RODRIGUEZ, *et al.*, *on behalf of*
*themselves and others similarly situated*,

                            Plaintiff,

                -against-

CPI AEROSTRUCTURES, INC., DOUGLAS
MCCROSSON, VINCENT PALAZZOLO,
CANACCORD GENUITY LLC, and B.
RILEY FBR,

                          Defendants.
--------------------------------------------------------X

                         **REPORT AND**
                         **RECOMMENDATION**
                         20 CV 982 (ENV) (CLP)

**POLLAK**, United States Magistrate Judge:

      On February 24, 2020, plaintiff Mark A. Rodriguez commenced the initial putative class

action against defendants CPI Aerostructures ("CPI" or the "Company"), Douglas McCrosson,

CPI's President and Chief Executive Officer during the relevant period, and Vincent Palazzolo,

CPI's Chief Financial Officer during the relevant period,[1] alleging violations of the securities

laws. (ECF No. 1). One day after plaintiff Rodriguez filed his Complaint in this action, Russell

Garrett filed a similar suit, captioned <u>Garrett v. CPI Aerostructures, Inc.</u>, No. 20 CV 1026

(E.D.N.Y.), alleging violations of the securities laws against the same defendants. The suits

were later consolidated under the instant matter (Docket No. 20 CV 982), and on April 22, 2021,

the Court administratively closed plaintiff Garrett's case.

---

[1] Mr. Palazzolo was terminated on November 18, 2019, but plaintiff alleges that he, along with defendant McCrosson, signed CPI's Form 10-Q for the period ending September 30, 2019, which contained false and inaccurate certifications. (Amended Complaint ("Am Compl."), ECF No. 35, ¶¶ 20, 197). <u>See</u> discussion <u>infra</u> at 3–4.

Currently pending before this Court on referral from the Honorable Eric N. Vitaliano is plaintiffs' motion for Final Approval of the Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses.  (ECF No. 64).  For the reasons set forth below, the Court respectfully recommends that the motion be granted.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Following the filing of the <u>Rodriguez</u> and <u>Garrett</u> actions, the Court, on May 5, 2020, appointed Jeffrey L. Feinberg, individually and as trustee and beneficiary of the Jeffrey L. Feinberg Personal Trust ("Lead Plaintiff"), to be lead counsel in the consolidated action, and approved Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Robbins LLP as Lead Counsel.  (ECF No. 24).

Thereafter, on September 24, 2020, following a comprehensive investigation into the claims, Lead Plaintiff filed a Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"), alleging claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, and under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934.  (Am. Compl.)  The Amended Complaint named the three originally named defendants but added Canaccord Genuity LLC and B. Riley F.B.R. as additional defendants. (<u>Id.</u>) The Amended Complaint brought claims on behalf of 1) purchasers of CPI common stock issued pursuant to or traceable to the Company's offering conducted on or about October 17, 2018; and 2) purchasers of CPI common stock between March 22, 2018 and February 14, 2020, inclusive (the "Class Period") (collectively, the "Class").  (<u>Id.</u> ¶ 1 & n.1; <u>see also</u> Pl.'s Mem.[2] at 1).

---

[2] Citations to "Pl.'s Mem." refer to Lead Plaintiff's Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation filed on August 5, 2022.  (ECF No.64-1).

The gravamen of the Amended Complaint is that CPI, a supplier of aircraft parts for fixed-wing aircraft, had publicly misrepresented that the Company's financial statements were in compliance with Generally Accepted Accounting Principles' ("GAAP") ASC Topic 606.[3] (Am Compl. ¶¶ 2–4). It was further alleged that CPI had represented that it had implemented ASC Topic 606, effective January 1, 2018, and that the adoption of ASC Topic 606 had not materially changed CPI's recognition of revenue under its contracts and had no impact on CPI's consolidated financial statements. (Id. ¶¶ 34–35). However, CPI subsequently determined that its failure to properly apply ASC Topic 606 caused its 2018 financial statements to overstate revenue by more than 19%, overstate its assets by 200%, overstate its net income by $14.2 million, and report shareholders' equity as $93.2 million when CPI had a shareholders' deficit of 7.4 million. (Id. ¶ 55).

According to Lead Plaintiff, in connection with CPI's October 16, 2018 equity offering, CPI made material misrepresentations that:

> (i) CPI's financial statements were presented pursuant to the rules and regulations of the SEC and in conformity with GAAP; (ii) CPI adopted the provisions of ASC Topic 606 effective January 1, 2018; (iii) CPI's revenue recognition on all of its customer contracts did not change materially as a result of the adoption of ASC Topic 606; (iv) the adoption of ASC Topic 606 had "no impact" on CPI's consolidated financial statements; (v) management's analysis of CPI's financial condition and the results of its operations contained materially false and inaccurate disclosures; and (vi) the Company's internal controls over financial reporting and disclosure controls were operating effectively.

---

[3] "ASC Topic 606" refers to GAAP Accounting Standards Codification Topic 606 *Revenue from Contracts with Customers.*

(Id. ¶ 68).  In so doing, according to Lead Plaintiff, CPI violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933.  (Id. ¶¶ 95–113).

Further, Lead Plaintiff alleges that from March 22, 2018, when CPI filed with the SEC its 2017 Form 10-K indicating that it had adopted ASC Topic 606, through February 14, 2020, when CPI announced that it did not follow the dictates of ASC Topic 606, defendants violated sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by making a series of material misrepresentations regarding its financial statements and accounting controls in public disclosures.  (Id. ¶¶ 115, 117, 118, 198, 232–39).  Lead Plaintiff claims that defendants were aware of the alleged misrepresentations or recklessly disregarded them.  (Id. ¶¶ 116, 233).  After CPI made that announcement on February 14, 2020, CPI's stock price plummeted, damaging investors.  (Id. ¶¶ 201, 206–07).  This consolidated putative class action, and several derivative actions were filed thereafter.  See, e.g., Moulton v. McCrosson, No. 20 CV 2092 (E.D.N.Y., filed May 7, 2020); Berger v. McCrosson, No. 20 CV 5454 (E.D.N.Y., filed Nov. 10, 2020).

On February 19, 2021, defendants moved to dismiss the Amended Complaint, arguing that the allegedly false and misleading statements were not made with scienter, that the only inference to be drawn was that CPI and the individual defendants misapplied a new accounting standard in reliance on CPI's outside auditor, and that the allegedly misleading material misstatements were nonactionable, subjective opinion statements.  (Ellman Decl.[4] ¶¶ 18–19).  On April 23, 2021, Lead Plaintiff opposed the motion to dismiss, reasserting its claims that

---

[4] Citations to "Ellman Decl." refer to the Declaration of Alan I. Ellman in Support of Motions for Final Approval of Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses, dated August 5, 2022.  (ECF No. 64-3).

defendants promulgated the misleading statements with scienter and that the statements were actionable.  (Id. ¶¶ 20–21).

On May 20, 2021, prior to defendants' deadline to submit their reply in connection with the motion to dismiss, the parties filed a letter motion reporting that they had reached a settlement in principle.  (ECF No. 52).  They also asked the Court to stay the case pending a motion for preliminary approval of the settlement agreement (id.), which the Court granted on May 21, 2021.  On July 9, 2021, Lead Plaintiff, on behalf of himself and all others similarly situated, filed an unopposed motion for preliminary approval of the class action settlement (the "Proposed Settlement"), certification of the Class, and approval of notice to the Class.  (ECF No. 54).  Although defendants agreed to the Proposed Settlement, they continued to deny all of the plaintiffs' claims, as well any allegations of fault, liability, or wrongdoing.  (Stip.[5] Section II). Defendants also argued that they had meritorious defenses upon which they would prevail at trial, and that while the "[l]itigation itself should not be certified as a class action for purposes of trial or adjudication of liability and damages," they were stipulating to certification of the proposed Class for purposes of settlement only.  (Id.; see also id. Section IV ¶ 3.1).

The signed Proposed Settlement Agreement "provides for the payment of $3,600,000 in cash for the benefit of the Class in exchange for a release of the Released Claims."[6]  (Ellman Decl. ¶ 3).  According to Lead Counsel, the Proposed Settlement "is in the best interests of the Class, especially considering its size and the significant risks involved in the case."  (Id. ¶ 5). The Proposed Settlement accounts for "approximately 22.5% of reasonable recoverable damages of approximately $16 million . . . [which] is a very good result, especially as compared to the

---

[5] Citations to "Stip." refer to the Stipulation of Settlement, filed with this Court on July 9, 2021.  (ECF No. 54-2).
[6] "Released Claims" are defined in the Proposed Settlement Agreement in Section IV, paragraph 1.27.

median percentage recovery in securities class actions alleging both Rule 10b-5 and §§ 11 and/or 12(a)(2) claims from 2012 through 2021 of 6.5% of damages." (Id. (citing Laarne T. Bulan & Laura E. Simmons, Cornerstone Rsch., Securities Class Action Settlements: 2021 Review and Analysis 7 fig.6 (2022))).

On June 7, 2022, the court granted the motion for preliminary approval of the Proposed Settlement of this putative securities class action, pursuant to Federal Rule of Civil Procedure 23(e)(1); certified the proposed Class for purposes of the settlement; approved the form and manner of notice of the proposed settlement to the Class; and approved the schedule proposed by Lead Plaintiff in his motion. (ECF No. 61).

Following the district court's Order granting preliminary approval ("Preliminary Approval Order"), the parties retained A.B. Data Ltd.'s Class Action Administration Company ("A.B. Data") to act as Claims Administrator to mail the individualized notices to the Class Members. (Ewashko Decl.[7] ¶¶ 1–2). On June 28, 2022, the Claims Administrator mailed the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), along with Proof of Claim and Release forms ("Proof of Claim") (together with the Notice, the "Notice Packet") to 210 names and addresses provided by defendants as potential Class Members. (Id. ¶¶ 2–3).

In addition, because the majority of potential Class Members likely are beneficial owners of the securities held in "street name," the Claims Administrator also sent Notice Packets to the largest and most common banks, brokers and other nominees (the "Record Holder Mailing Database"). (Id. ¶ 4). The Notice Packet directed the brokers and nominees who purchased CPI stock during the Class Period to provide A.B. Data with a list of persons who purchased CPI

---

[7] Citations to "Ewashko Decl." refer to the Declaration of Jack Ewashko Regarding Mailing of Notice and Publication of Summary Notice, dated August 1, 2022. (ECF No. 64-4).

stock or to send a copy of the Notice and Claim Form to those persons by First Class mail.  (Id. ¶ 6).  In total, the Claims Administrator mailed by First Class mail 5,194 Notice Packets to the institutions listed in the Record Holder Mailing Database, and to the individual names provided by defendants on June 28, 2022.  (Id. ¶ 5).  Also on June 28, 2022, A.B. Data established a Settlement website for this action, www.CPIAeroStructuresSecuritiesSettlement.com.  (Id. ¶ 12).  The website contains information regarding the action, along with copies of the Notice, Proof of Claim, Proposed Settlement Agreement, and Preliminary Approval Order.  (Id.)  Finally, A.B. Data also established a toll-free telephone line to provide information and answer questions about the Proposed Settlement.  (Id. ¶ 11).

As of July 31, 2022, A.B. Data had received an additional 1,853 names of potential Class Members, as well as requests for an additional 3,280 Notices Packets to be forwarded by the nominees to their customers.  (Id. ¶ 7).  Thus, as of July 31, 2022, 10,327 Notice Packets were mailed; in addition, A.B. Data has re-mailed 378 Notice Packets after the original packets were returned by the Post Office.  (Id. ¶ 8).

In addition to mailing the Notice Packet, A.B. Data asked that the Depository Trust Company post the Summary Notice on their Electronic Legal Notice System, which is a comprehensive library of notices about eligible securities.  (Id. ¶ 9).  The Summary Notice was also published in Investor's Business Daily and released via PR Newswire on July 4, 2022.  (Id. ¶ 10).

On August 5, 2022, Lead Plaintiff submitted the instant Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and An Award of Attorneys' Fees and Expenses.  (ECF No. 64).  As set forth in the Supplemental Declaration of Jack Ewashko,

through August 30, 2020, A.B. Data had mailed a total of 11,605 Notice Packets to potential

Class Members and nominees.  (Ewashko Supp. Decl.[8] ¶ 3).  The deadline for requests for

exclusion from the Proposed Settlement was August 19, 2022, and as of August 31, 2022, no

requests for exclusion had been received.  (Id. ¶ 7; Ellman Decl. ¶ 10).  The deadline for filing

objections to the Proposed Settlement was also August 19, 2022, and no objections were filed.

(Ellman Decl. ¶ 10; Reply[9] at 2–3).

On September 9, 2022, this Court held a fairness hearing at which counsel for plaintiffs

and defendants appeared, seeking final approval of the class settlement.  On December 9, 2022,

Lead Plaintiff submitted supplemental information, which detailed that 1,125 total claims had

been submitted and the claims administrator's expenses totaled $149,201.62.  (ECF No. 66).  A

determination of the validity of each of those claims would be completed upon final approval.

(Id.)

## DISCUSSION

I.    Final Approval of the Class

After preliminarily certifying a settlement class, a court "then grants or denies final

approval of the settlement and certification of the class."  Patterson v. Premier Constr. Co. Inc.,

No. 15 CV 662, 2017 WL 122986, at *2 (E.D.N.Y. Jan. 12, 2017).  "Before approving a class

settlement agreement, a district court must first determine whether the requirements for class

certification in Rule 23(a) and (b) have been satisfied."  Berni v. Barilla S.p.A., 964 F.3d 141,

---

[8] Citations to "Ewashko Supp. Decl." refer to the Supplemental Declaration of Jack Ewashko Regarding:  (A) Mailing of the Notice and Claim Form and (B) Report on Requests for Exclusions, attached to the Reply Memorandum of Law in Further Support of Motions for Final Approval of Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses, dated August 31, 2022.  (ECF No. 65–1).
[9] Citations to "Reply" refer to the Reply Memorandum of Law in Further Support of Motions for Final Approval of Class Action Settlement and Approval of Plan of Allocation and an Award of Attorneys' Fees and Expenses filed on September 5, 2022.  (ECF No. 65).

146 (2d Cir. 2020) (quoting <u>In re American Int'l Grp. Sec. Litig.</u>, 689 F.3d 229, 238 (2d Cir. 2012), <u>abrogated on other grounds</u>, <u>Amgen Inc. v. Connecticut Ret. Plans & Trust Funds</u>, 568 U.S. 455 (2013)).

Lead Plaintiff seeks an Order of final certification of the proposed Class for purposes of the settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. (Pl.'s Mem. at 4–5). The parties have stipulated that the Class should consist of:

> all Persons who purchased CPI common stock during the Class Period, including purchasers of CPI common stock issued pursuant to and/or traceable to the Company's offering conducted on or about October 17, 2018. Excluded from the Class are: (i) Defendants; (ii) members of the immediate family of either of the Individual Defendants; (iii) any person who was an officer or director of CPI or an Underwriter Defendant during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest (provided, however, that any Investment Vehicle shall not be excluded from the Class); and (v) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded Person. Also excluded from the Class is any Person who would otherwise be a Member of the Class but who validly and timely excluded himself, herself, or itself therefrom.

(Stip. Section IV ¶ 1.6). The Class Period is defined as March 22, 2018 through February 14, 2020. (<u>Id.</u> ¶ 1.8). The Parties have stipulated to certification of Lead Plaintiff as Class Representative and certification of Robbins Geller and Robbins LLP as Class Counsel. (Pl.'s Pre. Mem.[10] at 17).

A. <u>The Requirements of Rule 23(a)</u>

As set forth in the Order granting preliminary approval, Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: [(i)] the class is so

---

[10] Citations to "Pl.'s Pre. Mem" refer to Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Class, and Approval of Notice to the Class, dated July 8, 2021. (ECF No. 54-1).

> numerous that joinder of all members is impracticable; [(ii)] there are questions of law or fact common to the class; [(iii)] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [(iv)] the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In the order granting preliminary approval, this Court found that the proposed Class satisfied the requirements of Rule 23(a)(1)-(4). (Pre. App. Order[11] at 20). Since that time, none of the Class Members have objected to or sought exclusion from the Class (Reply at 2–3), and there is no other material information now before the Court that would alter the Court's findings at the time of its preliminary approval order. However, in recommending that the district court grant final certification, the Court briefly reviews the relevant factors necessary for certification under Rule 23(a).

### 1. Numerosity

Lead Plaintiff contends that the proposed Class satisfies the numerosity requirement of Rule 23(a)(1). (Id.) As the Second Circuit has noted, "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), cert denied, 115 U.S. 2277 (1995). Here, the Claims Administrator sent out over 11,000 Notice packets (Ewashko Supp. Decl. ¶ 3), which would suggest the Class is sufficiently numerous. Thus, this Court respectfully recommends that the district court find that the Class satisfies Rule 23(a)'s numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires plaintiffs to demonstrate that common questions of law or fact affect all class members. Fed. R. Civ. P. 23(a)(2). The Court previously found during the

---

[11] Citations to "Pre. App. Order" refers to this Court's Report & Recommendation recommending preliminary approval of the Proposed Settlement, dated November 9, 2021, ECF No. 58, report and recommendation adopted by the District Court's electronic Order dated May 27, 2022

preliminary approval inquiry that there were common questions of law and fact that make this case appropriate for class certification.  (Pre. App. Order at 16).  "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized class-wide proof.'"  Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (alteration in original) (quoting 2 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 4:50, at 196–97 (5th ed. 2012)).

Lead Plaintiff argues that "commonality exists where, as here, all Members of the Class purchased CPI common stock subject to the same alleged misrepresentations and omissions." (Pl.'s Mem. at 4; see also id. (citing Yi Xiang v. Inovalon Holdings, Inc., 327 F.R.D. 510, 522 (S.D.N.Y. 2018))).  Since nothing has changed since the Court's initial finding of commonality and in light of these critical common questions relating to the same misrepresentations and omissions, the Court respectfully recommends that the District Court find that Rule 23(a)(2)'s commonality requirement is satisfied here.

3.  Typicality

Typicality requires that the claims of the class representatives be typical of those of the class. Fed. R. Civ. P. 23(a)(3).  To satisfy this requirement, "the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (quoting Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)).

Lead Plaintiff claims that, like the other Class Members, he suffered compensable losses as a result of CPI's misleading disclosures related to its use of the ASC Topic 606.  (Pl.'s Mem.

at 4).  Consistent with the Court's preliminary finding of typicality (Pre. App. Order at 18), the Court finds that Lead Plaintiff would need to advance the same legal arguments as the rest of the Class to prove defendants' liability with respect to those allegedly misleading disclosures.  Thus, the Court respectfully recommends that the District Court find that Lead Plaintiff satisfies the typicality requirement of Rule 23(a)(3).

    4.  <u>Adequate Representation</u>

To satisfy Rule 23(a)(4), which requires that the interests of the class be adequately represented, the Second Circuit has established a two-pronged test meant to discover "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d at 35 (quoting <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 60 (2d Cir. 2000)); <u>see also</u> <u>Hill v. City of New York</u>, 136 F. Supp. 3d 304, 356 (E.D.N.Y. 2016).  The Court previously found that Lead Plaintiff's interests did not conflict with those of the Class and that Lead Plaintiff and Lead Counsel's efforts at prosecuting the case to settlement demonstrated their adequacy.  (Pre. App. Order at 19).

As nothing in the record suggests a contrary finding, this Court respectfully recommends that the District Court find that the Class is adequately represented by Lead Plaintiff and Lead Counsel, satisfying the requirements of Rule 23(a)(4).

    5.  <u>Ascertainability</u>

Although not an enumerated Rule 23(a) factor, "'[m]ost . . . circuit courts of appeals have recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be readily identifiable,' often characterized as 'an ascertainability requirement.'"

In re Petrobras Sec., 862 F.3d 250, 264 (2d Cir. 2017) (internal quotation marks omitted) (quoting Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 995 (8th Cir. 2016)); Hughes v. The Ester C Co., 317 F.R.D. 333, 348–49 (E.D.N.Y. 2016).

Here, the Class definition clearly defines membership to the Class by the dates of investors' purchases of CPI stock.  "Ascertaining the members of the class will be easily administrable by references to investor records."  Pearlstein v. BlackBerry Ltd., No. 13 CV 7060, 2021 WL 253453, at *13 (S.D.N.Y. Jan. 26, 2021).  Thus, this Court respectfully recommends that the District Court determine that the Class satisfies the requirements of Rule 23 (a)(1)-(4), as well as the implied requirement of ascertainability.

B.  The Requirements of Rule 23(b)

Lead Plaintiff claims that the proposed Class meets the requirements of Rule 23(b)(3). (Pl.'s Mem. at 5).  The court may grant certification under Rule 23(b)(3) "if both (1) 'questions of law or facts common to class members predominate over any questions affecting only individual members' and (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (quoting Fed. R. Civ. P. 23(b)(3)).  In the Order granting preliminary approval of the Class, this Court found both that common questions of law and fact predominate and that a class action was the superior method for adjudicating the claims in this case.  (Pre. App. Order at 23). Since the time of the Court's Order, nothing has come to light that would alter this Court's original findings.  The basis for the Court's findings are summarized below.

1.  Predominance

"Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  Waggoner v. Barclays PLC, 875 F.3d 79, 93 (2d Cir. 2017) (quoting Roach v. T.L. Cannon Corp., 778 F.3d at 405); see also In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 118 (2d Cir. 2013).  Courts focus on whether common questions related to liability predominate.  Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372–73 (S.D.N.Y. 2007) (explaining "when determining whether common issues predominate, courts focus on the liability issue . . . and if the liability issue is common to the class, common questions [predominate over individual ones]") (quoting Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 157–58 (S.D.N.Y. 2002)).

Lead Plaintiff asserts that predominance is satisfied in this case because the putative Class Members' claims center on "Defendants' alleged misrepresentations and omissions in their public statements, which predominates over any theoretical individual issue that may arise." (Pl.'s Mem. at 5).  The answer to whether the misstatements and omissions issued by CPI and identified in the Complaint were misleading and in violation the Securities and Exchange Acts is the same for every Class Member.  Accordingly, since such common questions as to liability will predominate for the Class, the Court respectfully recommends that the district court find that the Class satisfies the predominance requirement of Rule 23(b)(3).  Even though each Class Member's damages as a result of the misstatements and omissions will vary depending on the number of shares involved, individualized issues as to damages is not enough to prevent a

14

finding of predominance.  See Roach v. T.L. Cannon Corp., 778 F.3d at 409 (holding

"individualized damages determinations alone cannot preclude certification under Rule

23(b)(3).

> 2.  Class Action as a Superior Method of Resolution

Additionally, to satisfy Rule 23(b)(3), the Court must consider:

> [(i)] the class members' interests in individually controlling the
> prosecution or defense of separate actions; [(ii)] the extent and
> nature of any litigation concerning the controversy already begun by
> or against class members; [(iii)] the desirability or undesirability of
> concentrating the litigation of the claims in the particular forum; and
> [(iv)] the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  When "[c]onfronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable

management problems, for the proposal is that there be no trial."  Amchem Prods., Inc. v.

Windsor, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

Similar to Lead Plaintiff's argument related to predominance, Lead Plaintiff contends that

"the class action mechanism is the best method of resolving all the individual claims aggregated

in this matter because the controversy for each Class Member is identical and will result in the

adjudication of all claims in one suit and one forum."  (Pl.'s Mem. at 5).  While the Court agreed

in its preliminary approval order that the class action device was the superior method of

resolving this matter, it is also evident now at the final certification stage, after notification has

been provided to Class Members, that the Class desires for these claims to be dealt with in the

aggregate as demonstrated by the absence of any objections or opt-outs.  (Reply at 2–3).  Thus,

the Court respectfully recommends that the District Court find that Rule 23(b)(3)'s superiority

requirement is satisfied.

C. Summary

Given the above reasoning, and pursuant to the parties' Proposed Stipulation and Lead Plaintiff's unopposed motion for final approval of the Class, the Court respectfully recommends that the district court grant Lead Plaintiff's request for final certification of the settlement class, consisting of all persons who purchased CPI common stock during the period from March 22, 2018 through February 14, 2020, including purchasers of CPI common stock issued pursuant to and/or traceable to the company's offering conducted on or about October 17, 2018. (Stip. Section IV ¶¶ 1.6, 1.8).

II.    Final Approval of the Class Settlement

Lead Plaintiff seeks final approval of the Proposed Settlement, as memorialized in the Proposed Settlement Agreement.

A. Legal Standards

Class action settlements require court approval. Fed. R. Civ. P. 23(e). In determining whether to approve a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted). The Federal Rules of Civil Procedure outline the factors which guide such a determination, namely, whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    i.    the costs, risks, and delay of trial and appeal;
    ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    iii.    the terms of any proposed award of attorney's fees, including the method of processing class-member claims;

      iv.   the terms of any proposed award of attorney's fees, including timing of payment; and

      v.   any agreement required to be identified under Rule 23(e)(3); and

(D) the Proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.' Paragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members . . . .'" In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (alteration in original) (internal citation omitted) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Recognizing that the fairness of a settlement is a determination within the sound discretion of the court, see Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)), it is clear that judicial policy favors the settlement and compromise of class actions. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116–17 (2d Cir. 2005); accord In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).

1.   The Approval Process

Approval of a class action settlement involves a two-step process. In re Initial Pub. Offering Sec. Litig., 243 F.R.D. 79, 87 (S.D.N.Y. 2007), adhered to on reconsideration, No. 01 CV 3020, 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007)). At the first step, "the court preliminarily certifies the class and approves the settlement terms, class notices, and administrative procedures proposed by the parties." Patterson v. Premier Constr. Co. Inc., 2017 WL 122986, at *2. At the second step, "class members (and non-settling defendants whose rights may be affected by the

proposed settlement) then have an opportunity to present their views of the proposed settlement, and the parties may present arguments and evidence for and against the terms, before the court makes a final determination as to whether the proposed settlement is fair, reasonable and adequate." In re Initial Pub. Offering Sec. Litig., 243 F.R.D. at 88.

On November 9, 2021, this Court recommended preliminary approval of the Proposed Settlement after considering the terms of the Proposed Settlement, whether the proposed Notice and method of providing Notice to the Class comported with Rule 23, the PSLRA and due process, and whether the settlement was not only procedurally but also substantively fair to the Class. This recommendation was subject to the reaction of the Class which has been positive in this case. Each of these factors are addressed briefly below.

2. Adequacy of Notice to Class Members

Under the Federal Rules of Civil Procedure, upon preliminary approval of the class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(3)(e)(1)(B). In addition, the court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

In the Order granting preliminary approval of the class action settlement, the district court approved of the form and substance of the Notice and Summary Notice proposed by Lead Plaintiff, finding that both the form of the Notice and the method for notifying Class Members set out in the Order comported with "the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, and due process, constitute the

best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto."  (ECF No. 61 ¶¶ 6–7, 14).  As noted supra at 7–8, A.D. Data mailed 11,065 Notice packets directly to Class Members and nominees, and published a copy of the Summary Notice in Investor's Business Daily and PR Newswire, as well as posting a copy of the Notice on the website www.CPIAeroStructuresSecuritiesSettlement.com.  (Ewashko Decl. ¶¶ 10, 12; Ewashko Supp. Dec. ¶ 3).  Although A.D. Data published the Summary Notice in Investor's Business Daily, rather than the Wall Street Journal, and created a website with a slightly different domain name, the methods used substantially and meaningfully complied with the district court's Order.  Cf. In re Fab Universal Corp. S'holder Derivative Litig., 148 F. Supp. 3d 277, 282 (S.D.N.Y. 2015) (holding "the Notice requirement of Rule 23.1 is . . . met" where notice was published in Investor's Business Daily, on the Company's website, in Global Newswire, and on Lead Counsel's website).  Moreover, by sending out Notice packets directly to individual Class Members and nominees, Notice here was the "best notice that is practicable under the circumstances."   Fed. R. Civ. P. 23(c)(2)(B).

3. Procedural Fairness

In granting preliminary approval, the district court also reviewed the proposed settlement for procedural fairness.  See McReynolds v. Richards-Cantave, 588 F.3d 790, 804 (2d Cir. 2009) (holding that "a District Court reviewing a proposed settlement 'must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests'") (alteration in original) (quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cit. 2001)); see also In re

Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May 30, 2013) (quoting same).  The court has the "fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately."  In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)); see also Ayzelman v. Statewide Credit Servs. Corp., 242 F.R.D. 23, 26 (E.D.N.Y. 2007) (quoting same).

As the Court found in its earlier Order (Pre. App. Order at 8), there is no question that the settlement was "achieved through arm[']s-length negotiations by counsel with the experience and ability to effectively represent the class's interests."[12]  Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982), cert. denied sub nom, Lewy v. Weinberger, Coyne v. Weinberger, 464 U.S. 818 (1983)).  Lead Plaintiff and Lead Counsel conducted a thorough factual investigation which included the review and analysis of SEC filings, news articles, analysts' reports, interviews and review of conference call transcripts, as well as consultation with a forensic accountant and damages expert.  (Ellman Decl. ¶¶ 13, 23–24; Pl.'s Mem. at 16–17).  Lead Counsel also engaged in extensive legal research and analysis before filing a detailed amended complaint and briefing the motion to dismiss.  (Ellman Decl. ¶¶ 13, 24; Pl.'s Mem. at 17).

Moreover, Lead Plaintiff represents that the settlement was arrived at through good-faith, arm's-length negotiations through informed counsel "before a neutral mediator, with no hint of collusion."  (Pl.'s Mem. at 9).  The parties engaged an experienced mediator, John R. Van Winkle, Esq. and participated in hard-fought mediation.  (Ellman Decl. ¶ 25; Pl.'s Mem. at 17).

---

[12] See supra at 12 for the Court's discussion on Lead Plaintiff and Lead Counsel's adequacy.

Although the action did not settle after the first session with the Mediator, ultimately on May 20, 2021, after extensive briefing and the development of a factual record, the parties accepted the Mediator's proposal to settle for $3.6 million for the benefit of the Class, subject to the negotiation of the terms of the Proposed Settlement Agreement and subject to court approval. (Ellman Decl. ¶ 25). The parties' involvement in mediation in this case "helps to ensure that the proceedings were free of collusion and undue pressure." D'Amato v. Deutsche Bank, 236 F.3d at 85 (citing County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1323 (2d Cir. 1990), abrogated on other grounds, Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008)). Thus, given the presumption of fairness when a class settlement has been reached after arm's-length negotiations between experienced, capable counsel, see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court respectfully recommends that the District Court find that the process of reaching the proposed settlement in this case was procedurally fair. See Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017).

4. Substantive Fairness

In addition to being the product of a fair process, the Court also previously found that the settlement award is fair and reasonable. (Pre. App. Order at 13). In evaluating the substantive fairness of a class action settlement, courts in this Circuit interpret the "Rule 23(e) factors to add to, rather than displace, the *Grinell* factors." In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., 330 F.R.D. at 29 (citing Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment) (explaining "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal"). In City of Detroit v. Grinnell

Corp., the Second Circuit enumerated nine factors to guide courts in evaluating the substantive

fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds,

Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche

Bank, 236 F.3d at 86; Lea v. Tal Educ. Grp., No. 18 CV 5480, 2021 WL 5578665, at *7–8

(S.D.N.Y. Nov. 30, 2021); Garcia v. Pancho Villa's of Huntington Vill., Inc., No. 09 CV 486,

2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

As set forth below, the Court has reviewed the substantive fairness factors set out in Rule

23(e) and the Grinnell factors and, consistent with its findings during the preliminary review of

the Proposed Settlement, finds that they satisfy the requirements of substantive fairness.

a. The Costs, Risks, and Delay of Trial and Appeal

"The first factor set forth under Rule 23(e)(2)(C), the 'costs, risks, and delay of trial and

appeal,' 'subsumes several Grinnell factors,' including the complexity, expense and likely

duration of litigation, the risks of establishing liability, the risks of establishing damages, and the

risks of maintaining the class through trial." Mikhlin v. Oasmia Pharm. AB, No. 19 CV 4349,

2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (quoting In re Payment Card Interchange Fee

& Merch. Disc. Antitrust Litig., 330 F.R.D. at 36).

In this case, the Proposed Settlement was designed to avoid the significant expense and delay that would result from continuing this complex securities litigation involving numerous class members.  See Mikhlin v. Oasmia Pharm. AB, 2021 WL 1259559, at *5 (explaining "[c]lass action suits 'have a well-deserved reputation as being most complex' and securities class actions are 'notably difficult and notoriously uncertain to litigate'") (internal citations omitted) (quoting In re Payment Card Interchange Fee & Merchant Disc. Antitrust Litig., 330 F.R.D. at 36, and In re Facebook, Inc., IPO Sec. & Derivative Litig., 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018)).

Among other things,  Lead Plaintiff considered the risk of dismissal or a grant of summary judgment on the claims, the possibility that the Class would not be certified, the expense involved in briefing a summary judgment motion and appeals, the expense and time involved in formal discovery, the fact that there was likely to be a dispute among experts on materiality, falsity and damages; the possibility of losing at trial, and the probability of appeals. (Pl.'s Mem. at 10–12; Ellman Decl. ¶ 4).  Thus, the benefit of a settlement that results in a substantial, immediate benefit to the Class, as opposed to the risk of continuing a years-long legal battle, weighs heavily in favor of accepting the Proposed Settlement.  (See Pl.'s Mem. at 12–13).  In addition, there were also significant risks involved in pursuing the class action, including the uncertainty of whether Lead Plaintiff could maintain class certification throughout the pendency of the matter and whether Lead Plaintiff would ultimately prevail on the merits, given the fact that defendants continue to vigorously deny any wrongdoing and would oppose class certification if litigation continued.  (Stip. Section II).  This concern was heightened by the decision of the SEC not to recommend an enforcement action against CPI.  (Ellman Decl. ¶ 22).

23

Moreover, as noted, in the absence of a settlement, both parties would require an expenditure of money and time litigating this case to trial and further delay would ensue.  (Pl.'s Mem. at 12).  Thus, in light of the costs of continued litigation, the complexity of the securities class action, the uncertainty involved in establishing defendants' liability, the Class's damages, and maintaining the class action through trial, the potential for protracted and uncertain litigation weighs in favor of approving the Proposed Settlement.

> b. The Effectiveness of Any Proposed Method of Distributing Relief to the Class and Class Member Treatment

The second factor to be considered a the court is whether the plan of allocation is "fair and adequate."  City of Providence v. Aeropostale, Inc., No. 11 CV 7132, 2014 WL 1883494, at *10–11 (S.D.N.Y. May 9, 2014) (quoting Maley v. Del Global Tech. Corp., 186 F. Supp. 2d. 358, 367 (S.D.N.Y. 2002)), aff'd sub nom, Arbuthnot v. Pierson, 607 F. App'x 73 (2d Cir. 2015).  If final approval is granted, Class Members will only be eligible to participate if they have an overall net loss on their transactions in CPI common stock during the Class Period.  (Ellman Decl. ¶ 29.  If there are sufficient funds, each authorized claimant will receive an amount equal to their claim, which will be determined by the Claims Administrator "based upon [a] recognized loss formula." [13]  (Id. ¶ 30).  Since it is unlikely that there will be sufficient funds to permit all claimants to receive their total claimed amount, each will receive their proportionate share of the award based on the percentage share of each claimant's claim to the total of claims of all authorized claimants.  (Ellman Decl. ¶ 30).  According to Lead Plaintiff, all Class Members are

---

[13] As explained in the Notice, the loss formula considers when the CPI common stock was purchased and in what amounts, whether shares were purchased pursuant and/or traceable to the October 2018 offering, whether the shares were sold, and, if so, when they were sold and for what amounts."  (Notice, ECF No. 54-3, Ex.1, at 13–14).

treated equitably by the Plan of Allocation "as everyone who submits a valid and timely Proof of Claim, and does not otherwise request exclusion from the Class, will receive a *pro rata* share of the Net Settlement Fund in the proportion that the . . . claim bears to the total of all . . . claims, provided the payment is $10.00 or more." [14]  (Pl.'s Mem. at 20).

Lead Counsel's in-house damages consultants prepared the Plan of Allocation and A.B. Data will process the claims and distribute the funds according to the Plan of Allocation, allowing claimants to cure any deficiencies in their claims.  (Ellman Decl. ¶ 30; see also Pl.'s Pre. Mem. at 5 (describing A.B. Data as "a nationally recognized class action settlement administrator")); see also City of Providence v. Aeropostale, Inc., 2014 WL 1883494, at *10 (explaining that "[a] plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel'") (internal quotation marks omitted) (quoting In re Am Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2001)).  In addition, under the claims process, the claimants can seek review of the Court in the event their claims are denied.  (Ellman Decl. ¶ 30).  The proposed Plan of Allocation is effective, fair, and reasonable and treats Class Members equitably.

### c. The Terms of any Proposed Award of Attorney's Fees, Including Timing of Payment

#### i. Attorney's Fees

Lead Counsel seeks an award of attorneys' fees representing 20% of the $3.6 million settlement amount, totaling $720,000, along with interest on both amounts.  (Pl.'s Mem. at 14;

---

[14] The Plan of Allocation alerts Class Members that "given the relative strength of Lead Plaintiff's claims, 25% of the Net Settlement Fund shall be allocated to Recognized Losses under the Exchange Act, and 75% shall be allocated to Recognized Losses under the Securities Act."  (Notice at 13).  The Court does not find that this Plan of Allocation poses any impediment to final approval.  Compare Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 181–82 (approving a Plan of Allocation that allocated settlement funds among three different groups of class members based on the strengths of their claims and relative risk of non-recovery).

Pl.'s Atty Mem.[15] at 1; Ellman Decl. ¶ 33).  Lead Counsel explains that they undertook this representation entirely on a contingent fee basis and assumed significant risk in pursuing these claims.  (Ellman Decl. ¶ 32).  Counsel claims to have devoted significant time and resources in connection with the litigation, working over 1,771 hours.  (Pl.'s Atty Mem. at 2).

In Boeing Co. v. Van Gemert, the Supreme Court stated that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  444 U.S. 472, 478 (1980); see also Goldberger v. Integrated Res. Inc., 209 F.3d at 47.  The policy behind awarding fees from a common fund is that such an award not only provides just compensation for counsel but it is designed to encourage experienced counsel to represent individuals in cases where damages have been inflicted on classes of people and is to discourage future similar misconduct.  City of Providence v. Aeropostale, Inc., 2014 WL 1883494, at *11.  In considering the fee request, the Court looks to 1) counsel's time and effort in connection with the litigation; 2) the quality of the representation; 3) the complexity of the litigation; 4) the risks of litigation; 5) the relationship of the fee to the settlement; and 6) public policy concerns.  See United States v. City of New York, No. 07 CV 2067, No. 13 CV 3123, 2016 WL 3417218, at *2 (E.D.N.Y. June 16, 2016) (quoting Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007)).

Lead Counsel urge the Court to approve a fee based on a percentage of the common fund obtained.  (Pl.'s Atty Mem. at 4–6).  Courts have recognized that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for

---

[15] Citations to "Pl.'s Atty Mem." refer to Lead Counsel's Memorandum of Law in Support of Motion for an Award of Attorney's Fees and Expenses, filed on August 5, 2022.  (ECF No. 64-2).

the efficient prosecution and early resolution of litigation."  In re Parking Heaters, Antitrust Litig., No. 15 MC 940, 2019 WL 8137325, *7 (E.D.N.Y. Aug. 15, 2019) (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d at 121).  Moreover, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. § 77z-1(a)(6).

As Lead Counsel notes, courts in this Circuit routinely award attorneys' fees of around 30% of the common fund.  (Pl.'s Atty Mem. at 7 (collecting cases awarding attorney's fees in the amount of one third of the class settlement award)); see also Seijas v. Republic of Argentina, No. 04 CV 1085, 2017 WL 1511352, at *13 (S.D.N.Y. Apr. 27, 2017) (explaining in that case that an award of attorney's fees in the amount of 30% of the class settlement award rather than one third was reasonable).  Here, counsel is requesting only 20% of the common fund, which is justified in light of the significant benefit achieved for the Class and given the considerable time and effort devoted by counsel to reaching a successful conclusion for the Class.

Based on a cross check of Lead Counsel's hours, the Court notes that Lead Counsel expended 1,771 hours, which, at their customary billing rates, amounts to a total lodestar fee of $1,227,933.25.  (Pl.'s Atty Mem. at 8; Robbins Geller Decl.[16] ¶ 4; Robbins Decl.[17] ¶ 4).  Thus, the requested fee of $720,000 represents only about 0.58 of Lead Counsel's lodestar.  In other complex contingent litigation, courts have awarded lodestar multipliers of between 2 and 5 or

---

[16] Citations to "Robbins Geller Decl." refer to the Declaration of Alan I. Ellman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, dated August 5, 2022. (ECF No. 64-5).

[17] Citations to "Robbins Decl." refer to the Declaration of Stephen J. Oddo Filed on Behalf of Robbins LLP in Support of Application for Award of Attorneys' Fees and Expenses, dated July 19, 2022.  (ECF No. 64-6).

more. See, e.g., Lopez v. Fashion Nova, No. 20 CV 9238, 2021 WL 4896288, at *3 (S.D.N.Y.

Oct. 19, 2021) (noting that lodestars of eight times are regularly awarded in the Second Circuit);

Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d at 123 (upholding 3.5 multiplier) (citing

cases). The fact that the requested fee is substantially less than the lodestar supports the award's

reasonableness.

Moreover, the amount of time and effort required by counsel is not surprising given that

the issues raised by the litigation were anything but straightforward. As set forth supra at 20–

21, Lead Counsel not only conducted a thorough investigation into the claims but researched

and briefed the motion to amend and to dismiss, prepared for and participated in formal

mediation sessions and post-mediation negotiations, and drafted the Proposed Settlement

Agreement, the motion for Preliminary Approval and the Plan of Allocation. (Pl.'s Atty Mem.

at 11–12).

In addition, the nature of this litigation was one facing substantial risks. Goldberger v.

Integrated Res., Inc., 209 F.3d at 54 (commenting that the risk undertaken in a case is often the

most important factor in determining whether to award a fee enhancement). Here, Lead

Counsel undertook this case on a completely contingent fee basis, with no guarantee of recovery

of fees or expenses. (Pl.'s Atty Mem. at 13). Lead Counsel were obligated to provide sufficient

attorney and paralegal resources to prosecuting the action, while facing the possibility that they

would not receive any fees. (Id. at 13–14). In addition, as set forth above, there were numerous

factors that made Lead Plaintiff's ability to prove his claims challenging, including the defenses

raised by the defendants, and the issues inherent in a jury trial, assuming the case survived the

motion to dismiss and any motion for summary judgment. (Id. at 14–15). The litigation was

also extremely complex and, as the court in In re Bayer AG Securities Litigation noted, "shareholder actions are notoriously complex and difficult to prove." No. 3 CV 1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008).

In considering the requested fee, the Court also looks to the quality of the representation of Lead Counsel as well as the quality of opposing counsel. See In re Flag Telecom Holdings, Ltd Sec. Litig., No. 2 CV 3400, 2010 WL 4537550, at *28 (S.D.N.Y. Nov. 8, 2010); In re Marsh ERISA Litig., 265 F.R.D. 128, 148 (S.D.N.Y. 2010). Here, Lead Counsel are experienced in securities class actions and complex litigations, and defendants' counsel were equally experienced, with lawyers from Wilmer Cutler Pickering Hale and Dorr LLP and Shearman & Sterling LLP. (Pl.'s Atty Mem. at 16–17).

The factors of public policy and the class reactions to the fee request also support granting Lead Counsel's request to approve the fee. Although over 11,000 copies of the Notice have been sent, informing Class Members of the fee request, no one objected. (Reply at 2–3). Finally, it is clear that there is an important public policy that favors enforcement of the securities laws and the Supreme Court has noted that private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985) (quoting J.I. Case Co. v. Borak, 377 U.S. 426, 432 (1964), abrogated on other grounds, Cort v. Ash, 422 U.S. 66 (1975)).

Having considered all of the relevant Goldberger factors, the Court finds that Lead Counsel's request for a fee of $720,000 is fair and respectfully recommends that the fee request be approved.

29

ii.   <u>Expenses, Service Awards, and other Costs</u>

"Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." <u>In re Vitamin C Antitrust Litig.</u>, No. 06 MD 1738, 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) (quoting <u>In re Arakis Energy Corp. Sec. Litig.</u>, No. 95 CV 3421, 2001 WL 1590512, at *17 n.12 (E.D.N.Y. Oct. 31, 2001); <u>see also</u> <u>In re Air Cargo Shipping Servs. Antitrust Litig.</u>, No. 06 MD 1775, 2015 WL 5918273, at *7 (E.D.N.Y. Oct. 9, 2015) (holding that "[l]awyers are generally entitled to reimbursement for reasonable out-of-pocket expenses").

Apart from attorneys' fees, Lead Plaintiff requests reimbursement of $20,042.03 in expenses. Having reviewed the supporting paperwork and recognizing the number of experts involved (<u>see</u> Robbins Geller Decl. ¶¶ 5–6; Robbins Decl. ¶¶ 5–6), the Court respectfully recommends that the request for expenses be granted.

In addition to expenses, Lead Plaintiff seeks to pay the Claims Administrator reasonable costs related to providing Notice to Class Members and processing claims from the Settlement Fund. (Stip. Section IV ¶ 2.9). The Claims Administrator's costs total $149,201.62. (ECF No. 66). Lead Plaintiff also seeks to pay any income taxes earned on the Settlement Fund out of the Settlement Fund. (<u>See</u> Stip. Section IV ¶ 2.11). Such costs are reasonable and the Court respectfully recommends that these requests be approved as well.

Finally, Lead Plaintiff is not seeking a service award.

d. <u>Other Grinnell Factors</u>

i.   <u>The Reaction of the Class to the Settlement</u>

The Court could not address the reaction of the Class to the settlement during the preliminary approval stage, but now that notice has been provided, it is apparent that the reaction of the Class has been a positive one.  Given the thousands of Notice Packets that have been sent and no opt-outs or objectors, the Court concludes that the reaction has been very high for a class action of this type.  See, e.g., In re Hudson's Bay Co. Data Sec. Incident Consumer Litig., No. 18 CV 8472, 2022 WL 2063864, at *9 (S.D.N.Y. June 8, 2022) (explaining that "[t]here have been no objections to the settlement and no requests for exclusion" which "weighs in favor of approval" of the class settlement); Velez v. Novartis Pharms. Corp., No. 04 CV 9194, 2010 WL 4877852, at *13 (S.D.N.Y. Nov. 30, 2010) (explaining "[i]t is well-settled that the reaction of the class to the settlement is perhaps the most significant factor . . . [and] the lack of objections may well evidence the fairness of the settlement") (emphasis omitted); Becher v. Long Island Lighting Co., 64 F. Supp. at 181 (explaining "[t]he absence of any objection by class members, except for one objection to the Plan of Allocation, evidences the class's overwhelming support of the Settlement" and there "[t]he absence of objection [was] particularly notable since over 11,000 potential class members were individually notified by mail of the Settlement").

> ii.  The Stage of the Proceedings and the Amount of Discovery Completed

Settlement is favored at an advanced stage after significant discovery has been undertaken so that the parties can appreciate the strengths and weaknesses of their claims.  See Velez v. Novartis Pharms. Corp., 2010 WL 4877852, at *13; In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537.  Here, as for the stage of the proceedings, the parties have already conducted extensive review of documents, evaluated the merits of the case, and participated in two mediation sessions with an experienced mediator.  See also In re Hi-Crush Partners L.P. Sec.

Litig., No. 12 CV 8557, 2017 WL 7323417, at *7 n.2 (S.D.N.Y. Dec. 19, 2014) (explaining

"[f]ormal discovery may not commence in cases brought under the PSLRA . . . until the motion

to dismiss is denied").  The Court finds this factor weighs in favor of approval because the

parties settled after developing an appreciation of their relative positions.

<blockquote>

iii. <u>The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Potential Recovery, the Risks of Litigation, and the Defendants' Ability to Withstand Greater Judgment</u>
</blockquote>

.

 "The dollar amount of the settlement by itself is not decisive in the fairness

determination" under this factor.  <u>In re Agent Orange Prod. Liab. Litig.</u>, 597 F. Supp. 740, 762

(E.D.N.Y. 1984), <u>aff'd sub nom.</u>, <u>In re Agent Orange Prod. Liab. Litig. MDL No. 381</u>, 818 F.2d

145 (2d Cir. 1987).  What constitutes a reasonable settlement amount "'is not susceptible of a

mathematical equation yielding a particularized sum,' but turns on whether the settlement falls

within 'a range of reasonableness.'"  <u>In re PaineWebber Ltd. P'ships Litig.</u>, 171 F.R.D. 104, 130

(S.D.N.Y.) (quoting <u>In re Michael Milken & Assocs. Sec. Litig.</u>, 150 F.R.D. 57, 66 (S.D.N.Y.

1993)), <u>aff'd sub nom.</u>, <u>In re PaineWebber Inc. Ltd. P'ships Litig.</u>, 117 F.3d 721 (2d Cir. 1997).

"It is well-settled law that a cash settlement amounting to only a fraction of the potential

recovery will not per se render the settlement inadequate or unfair."  <u>Johnson v. Brennan</u>, No. 10

CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting <u>Officers for Just. v.

Civil Serv. Comm'n</u>, 688 F.2d 615, 628 (9th Cir. 1982)).  This flows from the fact that "[d]ollar

amounts are judged not in comparison with the possible recovery in the best of all possible

worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  <u>In re Agent

Orange Prod. Liab. Litig.</u>, 597 F. Supp. at 762.  "In fact there is no reason, at least in theory, why

a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single

percent of the potential recovery."  <u>City of Detroit v. Grinnell Corp.</u>, 495 F.2d at 455 n.2; <u>see</u> <u>In re MetLife Demutualization Litig.</u>, 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Here, the settlement amount of $3.6 million represents "approximately 22.5% of reasonably recoverable damages of approximately $16 million[,]" which is even higher under defendants' estimate of the Class's damages.  (Ellman Decl. ¶ 5).  Lead Plaintiff claims that this is a "very good result."  (<u>Id.</u>)  Given the risks that plaintiffs would face if they were to proceed to trial as articulated above, this Court finds that this factor favors the settlement as well.  This amount is even more reasonable considering "there was no assurance that Defendants could withstand a greater judgment, as CPI stock no longer trades on the New York Stock Exchange, but rather on the over-the-counter pink sheets, and it has limited insurance policies and other liquid assets to satisfy a judgment."  (Pl.'s Mem. at 18).  Given the foregoing discussion of the <u>Grinnell</u> factors, the Court recommends that the district court find that Proposed Settlement is substantively fair.

B.  <u>Summary</u>

In summary, the Court has considered the factors relevant to determining the substantive fairness of the Proposed Settlement, the procedural fairness of the Proposed Settlement, the adequacy of notice, and most importantly, the reaction of the Class to the settlement, and respectfully recommends that the district court finally approve the Proposed Settlement as fair, reasonable, and adequate.

CONCLUSION

Accordingly, for the reasons stated above, the Court respectfully recommends that the district court grant plaintiff's motion for final approval of the settlement as articulated in the

Stipulation of Settlement, along with the Plan of Allocation, and certify the Class for the purposes of settlement.  The Court further recommends the district court approve the requested attorneys' fees, and expenses.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 16, 2023

_Cheryl L. Pollak_

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

34